David J. Carmain, Plaintiff-Respondent,

v.

Affiliated Capital Corporation, a Wisconsin corporation, Chestnut Ridge Apartments I, LLP, and Chestnut Ridge Apartments II, LLP, Defendants-Appellants.

Court of Appeals

*No. 01–3077. Submitted on briefs August 21, 2002.—Decided October 2, 2002.*

2002 WI App 271

(Also reported in 654 N.W.2d 265.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Daniel W. Krueger* of *Godfrey, Leibsle, Conover, Blackbourn & Howarth, S.C.*, Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert E. Mahoney* of *The Mahoney Law Firm, LLC*, Delavan.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Affiliated Capital Corporation (ACC) and Chestnut Ridge Apartments I, LLP and Chestnut Ridge Apartments II, LLP (collectively, Chestnut Ridge) appeal from a default judgment granted to David J. Carmain awarding him damages in the amount of $12,000. ACC and Chestnut Ridge first argue that the circuit court erred in concluding that service upon Chestnut Ridge was sufficient. In addition, ACC and Chestnut Ridge argue that a letter filed by ACC's director of property management, a nonlawyer, constituted an answer sufficient to amend the pleadings and allow joinder of issue; in the alternative, ACC and Chestnut Ridge argue that if the letter does not constitute an answer, their failure to file an answer is the result of excusable neglect. Finally, ACC and Chestnut Ridge argue that the circuit court erred in prohibiting them from presenting evidence on the issue of damages.

¶ 2. We agree that Chestnut Ridge was not properly served and ACC should have been allowed to present evidence on the issue of damages. However, we

also conclude that ACC's letter was not a proper answer and ACC has not demonstrated excusable neglect.

## FACTS

¶ 3. In fall 2000, Carmain was a resident of an apartment building complex owned by Chestnut Ridge and managed by ACC. ACC had hired Carmain to perform occasional maintenance tasks; Carmain was to be compensated for this work. At some point, ACC terminated its relationship with Carmain.

¶ 4. Carmain filed suit on February 15, 2001, alleging breach of contract against ACC and Chestnut Ridge, requesting damages "in an amount in excess of $12,000." On February 22, 2001, two separate copies of the summons and complaint, one for Chestnut Ridge I and another for Chestnut Ridge II, were delivered by a Walworth county deputy sheriff to "Jerry Mann, Employee in charge" at 433 Autumn Drive, Delavan, Wisconsin, the office for Chestnut Ridge. Mann was a maintenance man for ACC.

¶ 5. Service was made on March 1, 2001, by personal service upon Fred H. Loeb, the registered agent of ACC and a nonpracticing attorney. Loeb apparently gave Lisa R. Barkelar, director of property management for ACC, the complaint; Barkelar, who is not an attorney, prepared a letter dated March 25, 2001, and forwarded a copy of this letter to Carmain's attorney and the circuit court.

¶ 6. On June 4, 2001, Carmain filed a motion for default judgment. A copy of this motion for default judgment and other supporting materials were mailed to and received by Loeb. In this motion for default judgment, Carmain asserted that ACC had been served

on March 1, 2001, and was therefore required to file an answer no later than April 16, 2001. The motion stated that ACC

has failed to file an Answer or other appropriate responsive pleading as required by statute. Rather, Defendant merely mailed a copy of a letter dated March 25, 2001 to the Clerk of this Court and the undersigned counsel for the Plaintiff. The Defendant Affiliated is in default as a result of its failure to file a responsive pleading or response in accordance with the applicable statute.

¶ 7. On June 13, 2001, ACC and Chestnut Ridge filed a document labeled "Amended Answer," along with a motion to dismiss for lack of personal jurisdiction over Chestnut Ridge and a response to Carmain's motion for default judgment. ACC and Chestnut Ridge asserted that Chestnut Ridge had been improperly served, that they had the right to amend their prior "answer" (the March 25, 2001 letter) and that they demonstrated excusable neglect for not filing a prior, original answer.

¶ 8. On June 20, 2001, the circuit court tentatively ruled against ACC and Chestnut Ridge on Carmain's motion for default judgment. The circuit court held that the substituted service of process on Chestnut Ridge was sufficient, that ACC was barred from amending the March 25, 2001 letter when no legally sufficient answer was made by a legally competent person and that excusable neglect was not exhibited under the circumstances. The circuit court gave ACC and Chestnut Ridge two weeks to respond to its tentative ruling and allowed additional filings but only as to the issues of service and excusable neglect.

¶ 9. The circuit court held a second motion hearing on August 3, 2001. The circuit court held that proper service was made on Chestnut Ridge and there

was no excusable neglect. The circuit court did not allow Chestnut Ridge and ACC to contest damages resulting from the default judgment but instead limited damages to the $12,000 amount Carmain had set forth in the complaint. An order for judgment was filed on August 23, 2001, reflecting these determinations. ACC and Chestnut Ridge appeal.

## DISCUSSION

*Service on Chestnut Ridge*

¶ 10. The manner for service of a summons is set forth at WIS. STAT. § 801.11 (1999–2000);[1] however, ACC and Chestnut Ridge argue this general service statute does not apply in this instance because WIS. STAT. § 179.04 contains specific, and hence exclusive, requirements for service on a Wisconsin limited partnership. Therefore, according to ACC and Chestnut Ridge, the circuit court erred when it concluded that service upon Chestnut Ridge was proper.

¶ 11. We examine the circuit court's decision to grant a default judgment under the erroneous exercise of discretion standard. *See Kerans v. Manion Outdoors Co.*, 167 Wis. 2d 122, 130, 482 N.W.2d 110 (Ct. App. 1992). However, this particular issue involves questions of statutory interpretation which we decide de novo. *See State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶ 11, 238 Wis. 2d 393, 617 N.W.2d 201. We agree that Chestnut Ridge was not properly served but not for the reasons proffered.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 12. Wisconsin Stat. § 179.04[2] states as follows:

**Record office and agent. (1)** Each limited partnership shall continuously maintain in this state the following:

(a) A record office at which shall be kept the records required under s. 179.05.

(b) An agent for service of process on the limited partnership, which agent must be an individual resident of this state, a domestic corporation or limited liability company, or a foreign corporation or limited liability company authorized to do business in this state.

**(2)** If a limited partnership fails to maintain an agent for service of process in this state or if the agent cannot with reasonable diligence be found, substituted service may be made on the department by delivering duplicate copies of the process, together with a fee of $10. The department shall forward one copy by registered mail, addressed to the limited partnership at its record office.

¶ 13. The plain language of Wis. Stat. § 179.04 does not provide an exclusive means for service on a limited partnership but merely mandates that a limited partnership maintain an agent for service in the state and provides for substitute service in case the limited partnership fails to comply.

¶ 14. Service is governed by Wis. Stat. § 801.11. Both Chestnut Ridge I and II are limited partnerships and are identified as such in the notice of retainer filed by Chestnut Ridge's attorney. Section 801.11(1) ad-

---

[2] Wisconsin Stat. § 179.04 has been amended by 2001 Wis. Act 44, § 17 but said amendment is immaterial to the issue before us.

dresses service upon a natural person, not a limited partnership. Section 801.11(2) provides for service upon a natural person with a disability. Section 801.11(3) and (4) supply service methods for the state and other political corporations or bodies politic, respectively. Section 801.11(5) applies to service upon domestic or foreign corporations or limited liability companies, not limited partnerships.

¶ 15. WISCONSIN STAT. § 801.11(6) addresses service on partnerships and states:

> A summons shall be served individually upon each general partner known to the plaintiff by service in any manner prescribed in sub. (1), (2) or (5) where the claim sued upon arises out of or relates to partnership activities within this state sufficient to subject a defendant to personal jurisdiction under s. 801.05(2) to (10). A judgment rendered under such circumstances is a binding adjudication individually against each partner so served and is a binding adjudication against the partnership as to its assets anywhere.

Subsection (6) requires service upon all the general partners known to Carmain; here, the only person served was a maintenance man. Service did not conform to the requirements of § 801.11(6).

██

¶ 16. While we do not agree with ACC and Chestnut Ridge that WIS. STAT. § 179.04 provides the exclusive means for service upon a limited partnership, a limited partnership may be served by serving the partnership's registered agent under § 179.04(1)(b) or by substituted service upon the Department of Financial Institutions pursuant to § 179.04(2). Neither of these procedures was followed.

¶ 17. In short, service upon the maintenance man did not comply with any of the requirements of WIS.

STAT. §§ 801.11 or 179.04. Because service was improper, the circuit court did not have personal jurisdiction over Chestnut Ridge and erred in denying the motion to dismiss Chestnut Ridge from the proceedings and granting Carmain default judgment against Chestnut Ridge.

*ACC's March 25, 2001 Letter*

¶ 18. ACC argues that the March 25, 2001 letter was a proper answer and the circuit court erred when it refused to allow it to file an amended answer. We disagree that the March 25, 2001 letter was a proper answer.

¶ 19. Again, we examine the circuit court's decision to grant a default judgment under the erroneous exercise of discretion standard. *See Kerans*, 167 Wis. 2d at 130. Here, the March 25, 2001 letter was prepared, signed and filed by Barkelar, director of property management for ACC and a nonlawyer. However, the Wisconsin Supreme Court has unequivocally stated that under Wisconsin rules and statutes, only lawyers can appear on behalf of or perform legal services for corporations in legal actions in Wisconsin courts. *Jadair Inc. v. U.S. Fire Ins. Co.*, 209 Wis. 2d 187, 202, 562 N.W.2d 401 (1997). The only exception to this rule is small claims court. *Id.* Carmain requested relief "in an amount in excess of $12,000," an amount which places this action outside of the small claims arena. Thus Barkelar, as a nonlawyer, could not legally appear on behalf of ACC and her letter was not a legally valid answer.

388

¶ 20. ACC vainly attempts to distinguish *Jadair*, arguing that the *Jadair* court only considered the consequences of a nonlawyer representing a corporation by filing a notice of appeal, not whether a party could amend the notice of appeal and have a lawyer file the notice of appeal on behalf of the corporation in order to correct the prior defects. This is not entirely true. The *Jadair* court specifically stated that "an appellate court will not permit amendment of a fundamentally defective notice of appeal to save jurisdiction" and held that a notice of appeal filed by a nonlawyer was fundamentally defective. *Id.* at 211–13.

¶ 21. In addition, the *Jadair* court did not limit its holding to notices of appeal but specifically stated, "Under the plain language of the rules and statutes, we conclude that only lawyers can appear on behalf of, or perform legal service for, corporations in legal proceedings before Wisconsin courts." *Id.* at 202. Furthermore, other courts have since affirmed *Jadair*'s holding, stating, "The Wisconsin Supreme Court has ruled that nonlawyers such as officers, directors, and shareholders may not represent corporations in Wisconsin courts. The supreme court ruled that corporations may appear in Wisconsin courts only by means of a lawyer licensed to practice law in Wisconsin . . . ." *Life Sci. Chur. v. Shawano County*, 221 Wis. 2d 331, 333, 585 N.W.2d 625 (Ct. App. 1998) (citation omitted). Barkelar is not a lawyer and thus her letter was not a legally recognizable answer, a nullity; ACC cannot amend a nullity.

¶ 22. ACC argues that if the March 25, 2001 letter does not constitute a legally recognizable answer, its failure to file an answer constitutes excusable neglect. Again, we disagree.

¶ 23. A party is entitled to relief from the default judgment if the judgment was the product of mistake, inadvertence, surprise or excusable neglect. WIS. STAT. § 806.07(1)(a). The burden is on the defendant to show that one of these requisite conditions exists. *Hansher v. Kaishian*, 79 Wis. 2d 374, 389, 255 N.W.2d 564 (1977). Excusable neglect is that neglect which might have been the act of a reasonably prudent person under similar circumstances. *Id.* at 391. The circuit court should consider whether the defaulting party acted promptly, whether the default judgment imposes excessive charges, and whether or not the default judgment would result in a miscarriage of justice. *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68–69, 257 N.W.2d 865 (1977).

¶ 24. A circuit court's discretion contemplates an exercise of judicial judgment based on three factors: (1) the facts of record; (2) logic; and (3) the application of proper legal standards. *Shuput v. Lauer*, 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982). We will not reverse a discretionary determination by the circuit court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372 (Ct. App. 1987).

¶ 25. ACC argues that its failure to file a proper answer constitutes excusable neglect because it acted promptly after being notified of the possibility of a default judgment, the damages imposed were excessive and a vacation of the default judgment prevents a miscarriage of justice. ACC argues that Barkelar's March 25, 2001 letter responded in a timely fashion and

because there was no response to the letter, ACC believed the letter response was adequate.

¶ 26. ACC relies heavily on the fact that once notified of the possibility of a default judgment, it responded quickly. "However, promptness does not of itself require an affirmative result; the matter remains in the trial court's discretion, to be exercised upon the totality of the circumstances." *Hansher*, 79 Wis. 2d at 392.

¶ 27. Here the circuit court stated:

> This court believes under all the circumstances that ACC's letter response by a nonlawyer was not the act of a reasonably prudent person under all the circumstances and, therefore, was not excusable. The legally educated president of ACC did not act reasonably when he failed to carefully read the summons and complaint and then instead gave it to a legally ignorant lay employee of· the corporation, and then without checking, left it to that employee to do what was required without directing her in any way. That is not the actions of a̧ reasonable — reasonably prudent person.

> It is clear that the president of the corporation . . . although he was referred to Chapter 802 statutes in the complaint, if he had read it, never bothered to look at that chapter much less warn his lay employee Barkelar to do so.

> Further, incredibly, he seemed unaware that this was not a small claims case even though the complaint clearly showed it was not; and he seemed totally unaware that a corporation cannot, except in small claims cases, act before the court except through an attorney.

We agree. Barkelar, as the director of property management for a substantial, sophisticated real estate management corporation, herself with significant academic and professional qualifications, was certainly able to understand the summons. Loeb, as an attorney, should be more than adept at understanding the practical and legal implications of a summons.[3] No explanation was provided as to why Loeb, president of the corporation and a nonpracticing lawyer, gave the complaint to Barkelar, a nonlawyer who "deals" only with small claims cases on behalf of ACC. No explanation was provided as to why, despite the fact that the clearly worded summons informed ACC of its legal obligations and responsibilities and contained a request for relief well beyond the limits of a small claims court, Barkelar thought a letter would suffice. Finding no excusable neglect was a proper exercise of the circuit court's discretion.

*Damages*

¶ 28. Finally, ACC argues that the circuit court erred in prohibiting it from presenting evidence regarding damages. We agree.

¶ 29. Upon entry of a default judgment, the circuit court may hold a hearing or inquiry to determine damages. *Smith v. Golde*, 224 Wis. 2d 518, 530, 592 N.W.2d 287 (Ct. App. 1999). Here, Carmain asked for damages "in an amount in excess of $12,000." WISCONSIN

---

[3] We do find it significant that Loeb, in his affidavit in opposition to the default judgment, failed to inform the circuit court that, in addition to being the registered agent and president of ACC, he is also a lawyer.

STAT. § 806.02 distinguishes between default judgments on liquidated damages and unliquidated damages claims. Section 806.02(4) grants the clerk authority to enter a default judgment only in actions "on express contract for recovery of a liquidated amount of money." This authority is not granted for recovery of unliquidated damages.

¶ 30. Wisconsin courts have declared that when determining damages for an unliquidated claim, a circuit court requires additional proof beyond the complaint. *Apex Elecs. Corp. v. Gee*, 217 Wis. 2d 378, 387, 577 N.W.2d 23 (1998). If the defendant contests the amount of damages, he or she may appear at a hearing to assess damages, cross-examine the plaintiff's witnesses and present evidence to mitigate or be heard as to the diminution of damages. *Smith*, 224 Wis. 2d at 530. A defendant has a substantial and fundamental right to participate and present evidence on his or her behalf as to the issue of damages. *See id.* at 530–31. The circuit court erred when it denied ACC this right.

## *CONCLUSION*

¶ 31. Chestnut Ridge was not properly served because the provisions of WIS. STAT. § 801.11 were not followed and the circuit court erred when it ruled otherwise; the circuit court therefore did not have jurisdiction over Chestnut Ridge. However, the circuit court was well within its discretion when it concluded that ACC's March 25, 2001 letter was not a proper answer and that ACC has not demonstrated excusable neglect. Finally, we conclude that the circuit court erred when it denied ACC the opportunity to present evidence on the issue of damages. We reverse the portion of

the judgment holding that Chestnut Ridge was properly served and that portion of the judgment relating to damages. We affirm that portion of the judgment holding that the March 25, 2001 letter was not a proper answer and that ACC did not demonstrate excusable neglect. We remand for a hearing on damages.

¶ 32. Costs are denied to all parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.