STATE of Wisconsin EX REL. Frederick Lee PHARM,
Petitioner-Appellant,†

v.

Byran BARTOW, Director, Wisconsin Resource
Center, Respondents-Respondents.

Court of Appeals

*No. 2004AP583. Submitted on briefs August 10, 2005.
—Decided September 21, 2005.*

**2005 WI App 215**

(Also reported in 706 N.W.2d 693.)

† Petition to review granted 3-1-06.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Roisin H. Bell, Nia Enemuoh-Trammell*, and *Brian A. Mayer*, of *Michael, Best & Friedrich, L.L.P.*, and the pro se brief of Frederick Lee Pharm.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *Peggy A. Lautenschlager*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J.   Frederick Lee Pharm appeals from an order denying his petition for habeas corpus discharge from a commitment pursuant to Wis. Stat. ch. 980 (2003–04).[1] Pharm argues that his waiver of extradition from Nevada to Wisconsin under the Interstate Agreement on Detainers (IAD) authorized only the Wisconsin criminal prosecution, not the later ch. 980 commitment proceeding. We hold that Pharm's rights under his waiver of extradition and the IAD were fully honored and that neither Pharm's waiver of extradition nor the IAD immunized Pharm from the subsequent ch. 980 commitment proceeding. We affirm the circuit court order denying Pharm's request for habeas corpus relief.

¶ 2.   At the outset, we express our appreciation and gratitude to Attorney Roisin H. Bell of Michael Best & Friedrich LLP, who represents Pharm pro bono on this appeal. Bell's representation of Pharm is in keeping with the highest standards of the legal profession and with SCR 20:6.1 (2005).[2]

## PROCEDURAL HISTORY

¶ 3.   The controlling facts of this case are not in dispute. In 1977, Pharm was convicted of murder in Nevada and sentenced to life in prison. In October

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] SCR 20:6.1 states:

**Pro bono publico service.** A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations, by service in activities for improving the law, the legal system or the legal profession, and by financial support for organizations that provide legal services to persons of limited means.

1987, the Nevada Department of Prisons informed Pharm that Wisconsin had filed a detainer against him based on pending charges in Milwaukee county of sexual perversion and indecent behavior with a child. In response, Pharm executed a waiver of extradition on October 10, 1987, in which he requested "final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against me . . . ." Pharm's waiver also covered "[service of] any sentence there imposed upon me, after completion of my term of imprisonment in this state." Finally, the waiver recited Pharm's "further consent voluntarily to be returned to the institution in which I now am confined."

¶ 4.  Based on Pharm's waiver of extradition, Nevada offered to deliver Pharm's temporary custody to Wisconsin pursuant to a custody offer which stated, "[Nevada] hereby offers to deliver temporary custody . . . in order that speedy and efficient prosecution may be had of the indictment, information or complaint . . . ." Nevada then submitted its custody offer, Pharm's waiver of extradition, and other paperwork required under the IAD to Wisconsin via a transmittal letter stating, "You may return the above subject to your jurisdiction for disposition of pending charges." Wisconsin accepted Pharm's temporary custody and returned him to this state in January 1988.

¶ 5.  Pharm pled not guilty and the matter went to a jury trial in Milwaukee county where Pharm was found guilty. The Milwaukee County Circuit Court imposed consecutive sentences totaling fifteen years and further ordered those sentences to be served consecutively to the life sentence Pharm was then serving in Nevada. Following the sentencing, Wisconsin returned Pharm to Nevada in October 1990 where Pharm

continued serving his Nevada sentence. The Wisconsin detainer remained in effect because Pharm was subject to the unserved Wisconsin sentence.[3]

¶ 6. Shortly after his return to Nevada, Pharm received a grant of parole from the Nevada Board of Parole Commissioners. The Parole Agreement recited as a parole condition, "Parole to Wisconsin Detainer." Accordingly, Pharm was returned to Wisconsin where he began serving his fifteen-year sentence on the Milwaukee county convictions. The terms of this exchange of custody were documented in a letter from the Nevada authorities to the Wisconsin authorities:

> The above named subject has been paroled to your hold and will remain under Nevada's parole supervision for Life. To assist us in fulfilling our responsibility in this matter, we request that you notify us immediately should the subject escape from your custody or of the final disposition of any pending charges.
>
> Please accept this letter as a request for sixty (60) days notification prior to the subject's release or transfer within your system.

¶ 7. During the time Pharm was serving his Wisconsin sentence, the Nevada authorities periodically wrote to the Wisconsin Department of Corrections, reminding them that Pharm was still under parole supervision in Nevada and that Nevada should be informed of any impending release of Pharm by the Wisconsin authorities.

¶ 8. Pharm was scheduled for mandatory release from his Wisconsin sentences on October 28, 1997. Shortly before this scheduled release, Nevada wrote to

---

[3] At the time of Pharm's Wisconsin conviction, WIS. STAT. ch. 980 had not yet been enacted.

Pharm and advised him that he was to immediately contact the Nevada Division of Parole and Probation upon his release.[4] However, on the date of Pharm's scheduled mandatory release, Wisconsin commenced a WIS. STAT. ch. 980 commitment proceeding alleging that Pharm was a sexually violent person. A jury agreed and the Milwaukee County Circuit Court entered an order committing Pharm to a secure mental health facility. The commitment was upheld on appeal. *See State v. Pharm*, 2000 WI App 167, 238 Wis. 2d 97, 617 N.W.2d 163.

¶ 9.   Acting pro se, Pharm filed a motion pursuant to WIS. STAT. § 806.07(1)(h) seeking to "open judgment," claiming that his WIS. STAT. ch. 980 commitment violated the Uniform Criminal Extradition Act, WIS. STAT. § 976.03. The circuit court denied the motion, Pharm appealed pro se, and we summarily affirmed the circuit court's ruling. *State v. Pharm*, No. 2001AP2835, unpublished slip op. (WI App Apr. 8, 2003).[5] Pharm followed with a habeas corpus action in the federal district court

---

[4] The record does not include any direct evidence of Wisconsin notifying Nevada of Pharm's scheduled mandatory release date. However, in light of Nevada's letter to Pharm, it is clear that Nevada was aware of Pharm's imminent release.

[5] We note that Pharm has taken inconsistent appellate positions as to whether he was returned to Nevada following his conviction in Milwaukee county. In summarily affirming Pharm's commitment, we noted, and rejected, Pharm's argument that Wisconsin was without jurisdiction to commence the WIS. STAT. ch. 980 commitment proceeding because Pharm had not been returned to Nevada following the Milwaukee convictions. *State v. Pharm*, No. 2001AP2835, unpublished slip op. at ¶ 6 (WI App Apr. 8, 2003). However, in this case, Pharm's position is just the opposite. Pharm contends he was returned to Nevada following the Milwaukee county convictions. The State agrees and, in fact, bases a portion of its argument on this fact.

claiming a violation of the IAD. However, the district court dismissed the case because Pharm had not exhausted his state remedies.

¶ 10. Still acting pro se, Pharm then commenced the instant habeas corpus action in state court, claiming that his WIS. STAT. ch. 980 commitment was unconstitutional because it violated the IAD. The circuit court rejected Pharm's request for discharge. Pharm again appealed pro se, but has since received the pro bono representation by Attorney Bell.

## DISCUSSION

■

¶ 11. A circuit court's order denying a petition for a writ of habeas corpus presents a mixed question of fact and law. Factual determinations will not be reversed unless clearly erroneous. However, whether habeas corpus relief is available to the petitioner is a question of law that we review de novo. *State v. Pozo*, 2002 WI App 279, ¶ 6, 258 Wis. 2d 796, 654 N.W.2d 12. In this case, the procedural history is not in dispute. Rather, the question before us is one of law, requiring us to interpret the IAD, a matter of statutory construction. *See Carmain v. Affiliated Capital Corp.*, 2002 WI App 271, ¶ 11, 258 Wis. 2d 378, 654 N.W.2d 265.

---

Given this history, it is likely that the court of appeals' rejection of Pharm's challenge to his extradition in appeal no. 2001AP2835 represents the law of the case on the question before us. However, the State does not invoke the law of the case doctrine. Instead, as noted, the State agrees with Pharm's present historical rendition and addresses Pharm's arguments on the merits. We therefore do not invoke law of the case against Pharm, and we address the issue on the basis of the parties' agreement that Pharm was returned to Nevada following the Milwaukee county convictions.

¶ 12. Pharm's pro se habeas corpus petition alleged that his WIS. STAT. ch. 980 commitment was unconstitutional "because it violates the Interstate Agreement on Detainers codified in Wisconsin at WIS. STAT. § 976.05." In his pro se brief in support of his petition, Pharm elaborated on this claim, arguing that the commitment was invalid because his waiver of extradition authorized only the Wisconsin criminal prosecution, not the later ch. 980 commitment proceeding. The circuit court denied habeas corpus relief to Pharm, ruling that Pharm was then subject to a valid order of commitment as a sexually violent person pursuant to ch. 980. However, as the State acknowledges, the court's ruling did not address Pharm's core argument that his waiver of extradition did not extend to the ch. 980 proceedings.[6] We will

---

[6] The State also draws a distinction between statutory habeas corpus and common law habeas corpus, contending that the circuit court properly ruled that Pharm was not entitled to statutory habeas corpus relief because he was committed under a valid judgment of commitment. However, the State says that the circuit court failed to address the common law aspects of Pharm's habeas corpus action. This form of habeas corpus relief lies for violations of the United States Constitution, *see State ex rel. Fuentes v. Court of Appeals*, 225 Wis. 2d 446, 451, 593 N.W.2d 48 (1999), and is an equitable doctrine allowing a court to tailor a remedy applicable to the particular facts. *State ex rel. Richards v. Leik*, 175 Wis. 2d 446, 452, 499 N.W.2d 276 (Ct. App. 1993).

We question the State's contention that Pharm would not have been entitled to statutory habeas corpus relief *if* the WIS. STAT. ch. 980 commitment proceeding was barred by Pharm's waiver of extradition and the IAD. Under that scenario, the Milwaukee County Circuit Court arguably would not have had the requisite competency to proceed in a ch. 980 commitment proceeding. Thus, the commitment order would not be valid. However, we need not address this question since we hold that Pharm's rights under the IAD were fully honored and the State

do so in this opinion.[7]

█

¶ 13. The IAD is a congressionally sanctioned interstate compact under the Compact Clause of the United States Constitution, Article I, Section 10, Clause 3. *Cuyler v. Adams*, 449 U.S. 433, 442 (1981); *see also State v. Grzelak*, 215 Wis. 2d 577, 580, 573 N.W.2d 538 (Ct. App. 1997). Wisconsin is a party to the Agreement pursuant to WIS. STAT. § 976.05. *Grzelak*, 215 Wis. 2d at 580. While the rights under the IAD are statutory, *State v. Miller*, 2003 WI App 74, ¶ 9, 261 Wis. 2d 866, 661 N.W.2d 466, they have the force of federal law. *See Cuyler*, 449 U.S. at 442.

¶ 14. We begin with the IAD as codified by WIS. STAT. § 976.05. The statute states in relevant part:

> **(3)** ARTICLE III. (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state *any untried indictment, information or complaint* on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner has caused to be delivered . . . his or her request for a final disposition to be made of the indictment, information or complaint . . . . (Emphasis added.)
>
> . . . .

---

was not barred from seeking Pharm's commitment pursuant to ch. 980. Thus, Pharm is not entitled to statutory or common law habeas corpus relief.

[7] We may uphold the result of a trial court's ruling irrespective of the trial court's rationale if the record supports our result. *State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App. 1985); *State v. Rash*, 2003 WI App 32, ¶ 4 n.2, 260 Wis. 2d 369, 659 N.W.2d 189.

(5) ARTICLE V. (a) In response to a request made under sub. (3) . . . the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where *such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had* . . . .

. . . .

(c) If the appropriate authority refuses or fails to accept temporary custody of said person, or in the event that an action on the *indictment, information or complaint* on the basis of which the detainer has been lodged *is not brought to trial within the period provided* . . . the appropriate court of the jurisdiction where the *indictment, information or complaint has been pending* shall enter an order dismissing the same with prejudice . . . . (Emphasis added.)

This statutory language clearly and unambiguously states that the IAD pertains to detainers based on *untried* charges and that a prisoner's request for a final disposition necessarily relates to such *untried* charges.

¶ 15. In this case, Wisconsin lodged a detainer against Pharm while Pharm was serving his life sentence in Nevada. In response, Pharm invoked his right to seek a timely disposition of the Wisconsin charges by executing his waiver of extradition. In fact, Pharm's waiver echoed the very words of the IAD—Pharm requested "final disposition of all *untried indictments, informations or complaints* on the basis of which detainers have been lodged against me . . . ." (Emphasis added.) Pharm's waiver of extradition also stated his "consent . . . to be returned to the institution in which I now am confined." Finally, Pharm's waiver acknowledged that it extended to "[service of] any sentence there imposed upon me, after completion of my term of

672

imprisonment in this state." This latter statement was in keeping with WIS. STAT. § 976.05(3)(e), which provides that a prisoner's waiver of extradition is "deemed to be . . . a waiver of extradition to the receiving state to serve any sentence there imposed upon the prisoner after completion of the prisoner's term of imprisonment in the sending state."

¶ 16. Thus, when Pharm executed his waiver of extradition, he had the following rights and expectations: (1) he would be transported to Wisconsin to answer to the pending Wisconsin criminal charges; (2) the Wisconsin charges would be tried within 180 days; (3) regardless of the outcome of the Wisconsin proceedings, he would be returned to Nevada to continue serving his Nevada sentence upon completion of the Wisconsin proceedings; and (4) upon completion of his Nevada sentence, he would be returned to Wisconsin to serve any sentence resulting from the Wisconsin prosecution. Pharm makes no argument that these rights and expectations were not honored and fulfilled. Rather, Pharm's complaint is that the Wisconsin commitment proceedings under WIS. STAT. ch. 980 upon the completion of his Wisconsin sentence were not within the scope of his waiver of extradition and the IAD.

¶ 17. We agree with Pharm that his waiver of extradition did not extend to the Wisconsin commitment proceedings under WIS. STAT. ch. 980, and we do not read the State to argue otherwise. However, that argument assists the State, not Pharm. As our analysis has indicated, the reach and purpose of Pharm's waiver of extradition was completed upon his return to Wisconsin to serve his Wisconsin sentence. Nothing under Pharm's waiver of extradition or the IAD dictated Pharm's fate thereafter.

673

¶ 18. Moreover, at the time Pharm was returned to Wisconsin to serve his Wisconsin sentence, he was no longer in custody serving his Nevada sentence. Rather, he was a Nevada parolee.[8] The same was obviously true when Wisconsin later commenced the Wis. Stat. ch. 980 commitment proceeding against Pharm. Based on *Carchman v. Nash*, 473 U.S. 716 (1985), we hold that the IAD does not apply to a parolee. In *Carchman*, Richard Nash was on probation from New Jersey when he was taken into custody and charged with various offenses in Pennsylvania. *Id*. at 721. New Jersey filed a detainer with Pennsylvania seeking Nash's custody, alleging that the Pennsylvania offenses constituted violations of Nash's New Jersey probation. *Id*. at 721–22. Nash responded with a request to New Jersey for final disposition of the probation violation charges. *Id*. at 722. However, New Jersey failed to bring Nash to trial within the 180–day time limit under the IAD. *Id*.

¶ 19. Nash then brought a petition for habeas corpus in the federal district court seeking dismissal of the probation violation charges. *Id*. The district court stayed the action pending Nash seeking relief in state court. *Id*. Nash then petitioned for habeas corpus relief in the New Jersey state courts, which relief was denied at the trial and appellate levels. *Id*. Nash then returned to the federal district court, which granted Nash's request for habeas corpus relief. *Id*. at 722–23. The Third Circuit Court of Appeals affirmed, ruling that an outstanding probation violation charge is an "untried

---

[8] True, Pharm remained in custody in Nevada despite being granted parole. But that custody was the result of the Wisconsin detainer, not the Nevada sentence.

indictment, information or complaint" within the meaning of Article III of the IAD. *Id.* at 723.

¶ 20.   However, the United States Supreme Court reversed the Court of Appeals. *Id.* at 734. Construing the same provisions of the IAD that we have analyzed, the Supreme Court concluded, as have we, that the language of the act is clear. *Id.* at 725. In addition, the Court held that the IAD does not apply to a probationer:

> The language of the [IAD] therefore makes clear that the phrase "untried indictment, information or complaint" in Art. III refers to criminal charges pending against a prisoner. A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III. Although the probation-violation charge might be based on the commission of a criminal offense, it does not result in the probationer's being "prosecuted" or "brought to trial" for that offense.

*Id.*[9] *Carchman* dealt with a probationer, but we can discern no reason why the same result would not apply to a parolee. If probation status or an allegation of a probation violation does not constitute an "untried indictment, information or complaint" under the IAD, it logically follows that the same must be said of parole status or an allegation of a parole violation.

¶ 21.   Pharm, however, relies on *Snyder v. Sumner*, 960 F.2d 1448 (9th Cir. 1992). There, Snyder was

---

[9] We acknowledge that here Pharm seeks to invoke the IAD as a shield against the Wis. Stat. ch. 980 proceedings, whereas in *Carchman v. Nash*, 473 U.S. 716 (1985), Nash affirmatively invoked the IAD as a sword to obtain extradition to the demanding state. *Carchman*, 473 U.S. at 722. But that does not mandate a different result in this case.

serving a prison sentence in Iowa when Nevada filed a detainer against him. *Id.* at 1450. Pursuant to the detainer and Snyder's response, Snyder was transferred to Nevada to stand trial on the Nevada charges. *Id.* While awaiting trial in Nevada, Iowa placed Snyder on parole. *Id.* Nevada did not bring Snyder to trial until well beyond the deadline prescribed by the IAD. *Id.* Snyder appealed to the Nevada Supreme Court, which upheld the conviction, ruling that most of the delay was attributable to Snyder. *Id.*

¶ 22. Snyder then pursued a habeas corpus action in the federal district court. *Id.* at 1451. In response, the State argued for the first time that the IAD deadlines did not apply because Iowa had paroled Snyder after his transfer to Nevada. *Id.* The district court agreed, but the Ninth District Court of Appeals reversed. *Id.* at 1451, 1457. In identifying the issue, the court of appeals said, "The issue here is whether the [IAD] continues to apply to a prisoner when he or she is paroled from the sending state while awaiting trial in the receiving state." *Id.* at 1453. Holding that the IAD continued to apply to Snyder, the court said:

> [W]e hold that the parole status of a prisoner, after he [or she] is sent to the receiving state, does not affect the applicability of the [IAD] . . . . We hold that once the defendant has been received by the receiving state, the . . . clock starts to run and cannot be turned off by a grant of parole by the sending state.

*Id.*

¶ 23. We find *Snyder* unpersuasive for two reasons. First, the decision fails to address *Carchman*. To the extent the decisions conflict, we obviously must follow the decision of the Supreme Court.

676

¶ 24.   Second, this case is factually different from *Snyder*. The Ninth Circuit Court of Appeals identified the issue as "whether the [IAD] continues to apply to a prisoner *when he or she is paroled . . . while awaiting trial in the receiving state." Snyder*, 960 F.2d at 1453 (emphasis added). In resolving that issue, the court said, "[W]e hold that the parole status of a prisoner, *after he [or she] is sent to the receiving state,* does not affect the applicability of the [IAD]." *Id.* (emphasis added). Unlike Snyder, Pharm was not placed on parole in Nevada while he was awaiting trial in Wisconsin. To the contrary, Pharm was placed on parole in Nevada *after* he had been tried in Wisconsin and returned to Nevada to continue his Nevada sentence. Also unlike Snyder, Pharm was not a prisoner in custody serving his Nevada sentence when he was returned to Wisconsin to serve his Wisconsin sentence. Instead, Pharm was already on parole. The same was obviously true at the time of Pharm's later commitment under Wis. Stat. ch. 980. *Snyder* does not govern this case.

¶ 25.   To sum up, Pharm's waiver of extradition and the IAD expressly gave Wisconsin the right to Pharm's custody to serve his Wisconsin sentence. At the completion of that sentence, the scope and purpose of Pharm's waiver of extradition and the IAD were satisfied and completed. Nothing in Pharm's waiver of extradition or the IAD governed or guaranteed future events. Specifically, Pharm had no right to be returned to Nevada upon the completion of his Wisconsin sentence, nor a legitimate expectation that he would be. Similarly, Pharm had no right or legitimate expectation of immunization from potential commitment proceedings under Wis. Stat. ch. 980.[10]

---

[10] The fact that Nevada continued to monitor Pharm's status and requested notification in the event of Pharm's

## CONCLUSION

¶ 26.   We hold that Pharm's waiver of extradition and the IAD did not bar the WIS. STAT. ch. 980 commitment proceedings against him. We affirm the order denying Pharm habeas corpus relief.

*By the Court.*—Order affirmed.

---

release does not alter our interpretation of the IAD. It is the statute, not Nevada's conduct, that controls the appellate issue.