**2025 UT App 162**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOEL SANCHEZ BARRIGA,
Appellant.

Opinion
No. 20210818-CA
Filed November 13, 2025

Second District Court, Farmington Department
The Honorable David J. Williams
No. 191700181

Scott L. Wiggins, Attorney for Appellant

Derek E. Brown and Jeffrey D. Mann,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

HARRIS, Judge:

¶1     A jury convicted Joel Sanchez Barriga of assault by a prisoner, and he now appeals that conviction. But he doesn't challenge the jury verdict itself. Instead, he asserts that the trial court erred by denying his pretrial motion to dismiss, in which he asserted that the Interstate Agreement on Detainers (the IAD) compelled dismissal of his case. We disagree with Barriga's position, and we accordingly affirm both (a) the court's order denying Barriga's motion to dismiss and (b) Barriga's conviction.

BACKGROUND

¶2    Before January 2019, Barriga had been convicted of crimes in both federal court and Utah state court, and he remained under some level of supervision by each. He had just recently been released from prison on the state charges, though he remained under the supervision of the Utah Board of Pardons and Parole (the Board) on those charges. After being paroled on the state charges, however, Barriga was taken into custody by federal authorities so that he could finish serving his sentence related to his federal charges. After taking custody of Barriga, federal authorities brought him to the Davis County Jail, where he was temporarily held "by contract with the federal government."

¶3    While at the Davis County Jail, Barriga attacked another inmate, striking the inmate repeatedly in the face. The attack appeared to have been motivated, at least in part, by a rivalry between two gangs. After the altercation, federal authorities moved Barriga to a federal facility in Colorado.

¶4    A couple of weeks later, the State of Utah—acting through the Davis County Attorney's Office[1] (the County)—charged Barriga with one count of gang-enhanced assault by a prisoner, a second-degree felony. The County asked for, and was granted, a warrant for Barriga's arrest; that warrant generally informed all law enforcement officers that Barriga had been charged with assault, and it "commanded" them to arrest Barriga and "bring [him] before" the trial court. When the trial court asked the County about this warrant during a hearing, the prosecutor asked that the warrant "remain outstanding" and indicated that the County was content to pursue the assault-by-prisoner charge against Barriga once he was "released from federal custody."

---

1. Because there are multiple state agencies involved in this case, we elect, for clarity's sake, to refer to each one by its specific name rather than merely referring to them all as "the State."

¶5 But the new assault-by-prisoner charge also constituted a potential parole violation in connection with Barriga's previous state convictions, and the Board chose to take a somewhat different tack than the County. Like the County, the Board also issued a warrant for Barriga's arrest, which generally commanded law enforcement officers who might encounter Barriga to arrest him and "return[] [him] to actual custody pending a determination whether there is probable cause to believe that [he] has violated the conditions of his . . . parole." But unlike the County, the Board took an additional step: it also "placed a detainer on [Barriga] asking the federal prison officials to return him to [its] custody at the termination of his federal sentence."[2]

¶6 Thereafter, while still in federal custody, Barriga made several attempts to invoke his rights under the IAD, a law that, among other things, provides a mechanism for a prisoner to demand to "be brought to trial within 180 days." Utah Code § 77-29-5 art. III. First, Barriga filed a document entitled "Request for Final Disposition of Detainer Pursuant to Interstate Agreement on Detainers Act." In that document, Barriga indicated his desire to have the case proceed quickly, and he asked the court to either (a) order that he "be brought before the Utah Department of Corrections to face allegations of Parole Violation within 180 days according to the IAD" or (b) "dismiss the detainer" that the Board had lodged "or order [the County] to dismiss" the new case. Barriga also filed two other documents making similar requests.

¶7 The Utah Department of Corrections (the Department) and the Board opposed Barriga's requests, and they took the position that the IAD does not apply to Barriga's circumstances. They argued, among other things, that the only detainer at issue was the one placed by the Board related to an alleged parole violation, and they cited caselaw indicating that the IAD does not apply to "detainers based on parole violation charges." The trial court

---

2. No actual copy of this detainer is contained in the record submitted to us. But all parties agree that the Board issued it.

agreed with the Department and the Board and denied Barriga's requests, concluding that the court "lack[ed] subject matter jurisdiction to consider" requests that asked the court to alter a sentence that had already been imposed in a different case, and because Barriga was not invoking any of the permissible exceptions to the general rule that a trial court's "jurisdiction over a criminal defendant ends upon imposition of a valid sentence and entry of final judgment."

¶8      Later, after his release from federal custody, Barriga filed a motion asking the court to dismiss the new case entirely, arguing that dismissal was warranted under the IAD because he had not been brought to trial within 180 days after he demanded disposition of his charge. The County responded, asserting that the only detainer that had been placed on Barriga involved the parole violation and that parole-violation detainers do not trigger the protections of the IAD.

¶9      The trial court agreed with the County and denied the motion to dismiss. Relying on *Carchman v. Nash*, 473 U.S. 716 (1985), the court explained that "[a]n alleged parole violation is not an 'untried indictment, information or complaint'" under the IAD. (Quoting Utah Code § 77-29-5 art. III(a).) The court thus determined that "[t]he hold put in place by the [Board] for the parole violation does not qualify as a 'detainer' [under] or trigger" the IAD. Additionally, the court determined that the County's arrest warrant did not qualify as a detainer under the IAD either. From this, the court concluded that "[n]either [the Board's] hold for the parole violation nor the un-lodged arrest warrant issued in this case qualif[ied] as a detainer" under the IAD and that therefore the IAD "does [not] apply and [Barriga's] request to invoke it had no effect."

¶10      The case then proceeded to trial, where a jury found Barriga guilty of committing assault by a prisoner, with a gang enhancement. The court later sentenced Barriga to prison.

ISSUE AND STANDARD OF REVIEW

¶11 Barriga now appeals his conviction, but he does not challenge the merits of the jury's verdict. Instead, he assigns error to the court's order denying his motion to dismiss. Specifically, he argues that the trial court erred in concluding that the IAD had no application here. We review a court's "statutory interpretation for correctness, granting no deference to the trial court's decision." *State v. Barney*, 2008 UT App 250, ¶ 5, 189 P.3d 1277.

ANALYSIS

¶12 The IAD is an interstate "compact" between the United States and the forty-eight individual states—including Utah—that have chosen to enact it. *Carchman v. Nash*, 473 U.S. 716, 719 (1985); *see also* Utah Code § 77-29-5. The IAD is designed to "encourage the expeditious and orderly disposition of" various types of issues concerning "persons already incarcerated in other jurisdictions." Utah Code § 77-29-5 art. I. Because the IAD is an interstate compact, sanctioned by Congress under the Compact Clause of the United States Constitution, *see Cuyler v. Adams*, 449 U.S. 433, 438 (1981), "the IAD is governed by federal law even though codified as a Utah statute," *State v. Brocksmith*, 888 P.2d 703, 704–05 (Utah Ct. App. 1994).

¶13 "[A] primary purpose of the [IAD] is to protect prisoners against whom detainers are outstanding." *Cuyler*, 449 U.S. at 449. Prisoners may utilize specific procedures outlined in the IAD to "demand the speedy disposition of certain charges pending against [them] in another jurisdiction." *United States v. Mauro*, 436 U.S. 340, 343 (1978).

¶14 But the provisions of the IAD that discuss these procedures are triggered only after a "detainer" is issued by an agency in one state and sent to the agency in the custodial state that is holding the prisoner. *See id.* ("[T]he provisions of the [IAD] are triggered

*only* when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner." (emphasis added)); *State v. Martin*, 765 P.2d 854, 856 (Utah 1988) ("[A]rticle III(a) [of the IAD] clearly states that a detainer must be lodged against the prisoner before [the prisoner] can invoke article III protection."); *see also* Utah Code § 77-29-5 art. III(a). A detainer "is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993). Additionally, the IAD requires that a detainer be based on an "untried indictment, information or complaint," Utah Code § 77-29-5 art. III(a), which the United States Supreme Court has stated "refers to criminal charges pending against a prisoner," *Carchman*, 473 U.S. at 725. Therefore, the relevant provisions of the IAD apply "solely to criminal charges." *Id.* at 724.

¶15   If a valid detainer is lodged with the custodial state, then the prisoner may "demand a speedy disposition of the charges giving rise to the detainer." *Mauro*, 436 U.S. at 351. To invoke this right, the prisoner must provide "written notice of the place of [the prisoner's] imprisonment and [the prisoner's] request for a final disposition to be made of the indictment, information or complaint." Utah Code § 77-29-5 art. III(a). This written notice must be given to the "warden, commissioner of corrections or other official having custody of [the prisoner], who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail." *Id.* § 77-29-5 art. III(b); *see also Martin*, 765 P.2d at 857 (holding that a prisoner who fails to give notice to the official having custody of [the prisoner] has not properly invoked the IAD's protections).

¶16   And if a prisoner makes a valid demand following the lodging of a detainer, then the state lodging the detainer must ensure that the prisoner is "brought to trial" on the relevant matter "within 180 days." Utah Code § 77-29-5 art. III(a); *see also*

*Fex*, 507 U.S. at 51 (holding that the 180-day period starts upon "the receiving State's receipt of the request"). If the state fails to timely bring the prisoner to trial, the IAD provides a remedy: "the appropriate court . . . shall enter an order dismissing the [indictment, information or complaint] with prejudice, and any detainer based thereon shall cease to be of any force or effect." Utah Code § 77-29-5 art. V(c).

¶17 In this case, Barriga contends that the assault-by-a-prisoner charge should have been dismissed because, in his view, a detainer was lodged against him, and he was not brought to trial within 180 days of requesting a speedy disposition of the case. We disagree: the trial court correctly concluded that a "detainer"—as that term is used in the IAD and interpreted by the United States Supreme Court—was never lodged against him and that, therefore, the IAD does not apply. In addressing Barriga's arguments, we first explain that the arrest warrant issued by the County was not a "detainer" as that term is used in the IAD. After that, we assess whether the Board's detainer qualifies as a "detainer" under the IAD, and we conclude that it does not.

A. The County's Arrest Warrant

¶18 This court has already grappled with whether an arrest warrant that is issued generally to all law enforcement officers— but not specifically delivered to the other state's custodial agency—qualifies as a "detainer" under the IAD, and we concluded that it does not. *See State v. Barney*, 2008 UT App 250, ¶ 10, 189 P.3d 1277. That case is materially indistinguishable here, and it controls the outcome of this first question.

¶19 In *Barney*, the defendant attempted to invoke his rights under the IAD after his release to a "halfway house" was canceled when prison officials discovered that an arrest warrant had been issued against him in another case. *Id.* ¶ 2. The defendant eventually filed a motion to dismiss, arguing that "the State violated his rights by not bringing him to trial within 180 days of

his request for disposition." *Id.* ¶ 4. The court denied his motion, and this court affirmed. *Id.* ¶¶ 4, 11. We noted that, in interpreting the IAD, the United States Supreme Court had "stated that '[a] detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution to either hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.'" *Id.* ¶ 7 (quoting *Carchman*, 473 U.S. at 719). We also noted that the arrest warrant in *Barney* had not been "sent to the [p]rison" in the custodial state, and that "Utah officials had not requested that the [p]rison either hold [the defendant] or inform them when his release was imminent." *Id.* ¶ 8. Instead, that warrant had simply "been issued" several years earlier and had been discovered by officials at the custodial prison only "by chance while searching [a] database." *Id.* ¶¶ 2, 8. Under those circumstances, we held that the arrest warrant "did not constitute a detainer under the IAD because it was not sent by Utah to the institution in which [the defendant] was incarcerated." *Id.* ¶ 10.

¶20 The arrest warrant issued by the County in the instant case was likewise generally issued and was available to law enforcement officers through databases; importantly, it was not specifically delivered to the custodial agency in Colorado, and the County made no request that Barriga be specifically held for pickup by the County or even that the custodial agency notify the County when Barriga's release was imminent. Under the circumstances, the County's arrest warrant did not qualify as a "detainer" for purposes of the IAD, and it therefore did not trigger the protections of that statute.

B.     The Board's Detainer

¶21 Our analysis with regard the Board's detainer is somewhat different, because the Board *did* "place[] a detainer on [Barriga] asking the federal prison officials [in Colorado] to return him to [its] custody at the termination of his federal sentence." But for different reasons, we nevertheless agree with the State's position

that this detainer likewise did not qualify as a "detainer" for purposes of the IAD. Under the terms of the IAD, a "detainer" must be based on an "untried indictment, information or complaint." Utah Code § 77-29-5 art. III(a). Interpreting this provision, the United States Supreme Court has held that a detainer that is based on a probation violation—even when the probation violation in question is the commission of new crimes— does not qualify as a "detainer" because it is not based on an "untried indictment, information or complaint." *Carchman*, 473 U.S. at 725 (cleaned up).

¶22    In *Carchman*, the defendant was on probation in New Jersey when he was arrested for committing new crimes in Pennsylvania; he was eventually tried and convicted on the new Pennsylvania charges. *Id.* at 721. The Pennsylvania charges constituted a violation of the conditions of the defendant's New Jersey probation and, while the defendant was awaiting trial in Pennsylvania, the New Jersey court issued "a bench warrant" related to the potential probation violation; that warrant "was lodged as a detainer with the appropriate corrections officials in Pennsylvania." *Id.* at 721–22. Soon after his conviction in Pennsylvania on the new charges, the defendant invoked the IAD by sending "a series of letters to New Jersey officials requesting final disposition of the probation-violation charge." *Id.* at 722. And "[t]he State of New Jersey failed to bring [the defendant] 'to trial' on the probation-violation charge within 180 days after" the defendant invoked the IAD. *Id.* The defendant then sought dismissal of the probation-violation charge in New Jersey, and the case eventually made its way to the United States Supreme Court, where the Court framed the relevant question like this: "whether [the IAD] applies to detainers based on probation-violation charges." *Id.* at 719.[3]

_____

3. We note here that, although the detainers in *Carchman* and in this case were both supervision-violation detainers issued by the

(continued…)

¶23    In its analysis, the Supreme Court first considered the language of the IAD, explaining that the statute "by its terms applies to detainers based on 'any untried indictment, information or complaint.'" *Id.* at 724. The Court explained that "[t]he most natural interpretation of the words 'indictment,' 'information,' and 'complaint' is that they refer to documents charging an individual with having committed a criminal offense." *Id.* It then pointed out that the term "'untried' . . . would seem to refer to matters that can be brought to full trial." *Id.* The Court also emphasized that the IAD's remedy is that the defendant must be *brought to trial* within 180 days." *Id.* (cleaned up). Finally, it noted that the IAD refers to a "prosecution." *Id.* at 725. From all this, the Court offered its view that "the language of the [IAD] . . . makes clear that the phrase 'untried indictment, information or complaint' . . . refers to criminal charges pending against a prisoner." *Id.* The Court thus concluded that probation-violation charges do not fall within the terms of the IAD since

court/agency with supervision over the defendant, Barriga seeks a different remedy than the defendant in *Carchman* sought. Specifically, Barriga has attempted to invoke the IAD in response to a supervision-violation detainer with the purpose of having the *underlying criminal charges* giving rise to the parole-violation charge dismissed, whereas the defendant in *Carchman*—in response to a similar detainer—attempted to have the *probation-violation charges* dismissed. *See Carchman v. Nash*, 473 U.S. 716, 722 (1985). Neither party has briefed whether this distinction matters in this case; without input from the parties, we wonder whether the remedy he asks for is even theoretically available to Barriga under these circumstances. Nevertheless, we follow the parties' apparent lead in assuming—for purposes of our analysis only and without deciding—that Barriga's attempted invocation of the IAD following a supervision-violation detainer (as opposed to a criminal-case detainer) could theoretically lead to dismissal of the underlying assault-by-prisoner charge (as opposed to merely the parole-violation proceedings).

those charges do "not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution" and do "not result in the probationer's being 'prosecuted' or 'brought to trial' for that offense." *Id.* Rather, a "probation-violation charge results in a probation-revocation hearing." *Id.*

¶24    This court, as well as other courts, have followed *Carchman* in this regard, as they must. *See id.* at 719 (stating that the IAD "is a congressionally sanctioned interstate compact" and, as such, "is a federal law subject to federal construction"). Indeed, citing *Carchman*, we have stated that the IAD "applies only to detainers that are based on an untried indictment, information, or complaint," and that "[d]etainers based on alleged parole or probation violations . . . are not based on untried charges and thus the [IAD] is inapplicable." *State v. Kahl*, 814 P.2d 1151, 1152 n.1 (Utah Ct. App. 1991); *see also United States v. Romero*, 511 F.3d 1281, 1284 (10th Cir. 2008) (citing *Carchman* and stating that the IAD "is inapplicable to probation or parole revocation detainers").

¶25    In this case, the trial court relied on *Carchman* in denying Barriga's motion to dismiss the case. And in our view, the court's reasoning was sound. The detainer lodged by the Board in this case is functionally identical to the detainer lodged by the New Jersey court in *Carchman*: both detainers were lodged by the supervising entity in the existing case, and both alleged that the defendant had violated the terms of his supervision by committing new crimes. We thus agree with the trial court that *Carchman* controls the second issue presented here: the Board's detainer—which was based on alleged violations of supervision conditions—did not qualify as a "detainer" under the IAD.

¶26    Barriga resists this conclusion by making two arguments. First, he points out that *Carchman* dealt with a *probation*-violation detainer while Barriga had a *parole*-violation detainer lodged against him. But this distinction is irrelevant. Like probation-violation charges, parole-violation charges do not result in the

parolee being "'prosecuted' or 'brought to trial' on the criminal offense for which [the parolee] initially was sentenced to probation." *See Carchman*, 473 U.S. at 725. Both a probation-violation charge and a parole-violation charge result in a supervision-revocation hearing rather than a trial. *See id.* We see no principled reason to distinguish between probation-violation detainers and parole-violation detainers in this context. Indeed, this court has already held that the IAD is inapplicable to both probation- and parole-violation detainers, *see Kahl*, 814 P.2d at 1152 n.1, and Barriga does not ask us to revisit this precedent, nor does he attempt to distinguish other cases that have rendered similar holdings, *see, e.g.*, *Romero*, 511 F.3d at 1284 (stating that the IAD "is inapplicable to probation or parole revocation detainers"); *State ex rel. Pharm v. Bartow*, 2005 WI App 215, ¶ 20, 706 N.W.2d 693 ("*Carchman* dealt with a probationer, but we can discern no reason why the same result would not apply to a parolee."), *aff'd*, 2007 WI 13, 727 N.W.2d 1.

¶27 Second, Barriga attempts to distinguish *Carchman* on the basis that, in *Carchman*, the defendant had already been convicted on the underlying charges at the time he invoked the IAD, whereas in this case Barriga's new charges remained pending when he invoked the IAD. Barriga's assertion is correct as a factual matter, but as the State points out, the Court in *Carchman* "did not identify the *timing* of the prisoner's requests as dispositive" and instead pointed to "the *type* of detainer" as the thing that mattered. Indeed, the holding in *Carchman* appears to be categorical: the IAD applies only to detainers lodged by the entity prosecuting a prisoner in another jurisdiction on an "untried indictment, information or complaint," and it does not apply to detainers lodged by supervising entities alleging only that a prisoner in another jurisdiction has violated the terms of probation or parole, even if the underlying supervision-violation allegation is that the prisoner has committed new crimes. *See Carchman*, 473 U.S. at 725–26 (stating that "a detainer based on a probation-violation charge is not a detainer based on 'any untried

indictment, information or complaint,'" and that this is true even where "the probation-violation charge might be based on the commission of a criminal offense").[4]

CONCLUSION

¶28   The trial court did not err in concluding that the IAD was not triggered either by the County's arrest warrant or by the Board's parole-violation detainer. We therefore reject Barriga's arguments and affirm both (a) the trial court's order denying Barriga's motion to dismiss and (b) Barriga's conviction.

_____

4. Barriga also asserts that the IAD's purposes and legislative history compel the conclusion that the statute was intended to apply to probation- and parole-violation detainers, at least where the supervision violation in question stems from the commission of new crimes. But the Court in *Carchman* considered the purposes of the statute, as well as the very legislative history Barriga now cites, and it reached a contrary conclusion. *See* 473 U.S. at 728–34. And as the State correctly points out, if Barriga were right that supervision-violation detainers based on the commission of new offenses fell within the IAD's ambit, *Carchman* would have come out differently, since the probation-violation detainer in that case was based on the commission of new crimes. Moreover, while the Court in *Carchman* noted that probation-violation charges "generally will be based on the criminal offense for which the probationer already was tried and convicted and is serving [a] sentence in the sending State," *id*. at 725, we do not discern in this statement a holding contrary to the Court's textual analysis, which categorically excludes probation-violation detainers from the ambit of the IAD, *id.* at 726. Indeed, the Court made this statement while expressly rejecting the legislative history and policy arguments similar to those that Barriga makes here.