# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP520 |

| | |
|---|---|
| COMPLETE TITLE: | Friendly Village Nursing and Rehab, LLC and Friendly Village Healthcare Center, |
| |         Plaintiffs-Appellants-Petitioners, |
| |    v. |
| | State of Wisconsin Department of Workforce Development and State of Wisconsin Labor and Industry Review Commission, |
| |         Defendants-Respondents, |
| |    v. |
| | Rhinelander Healthcare Operator 150, LLC, |
| |         Defendant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 395 Wis. 2d 701,954 N.W.2d 392
PDC No:2021 WI App 9 - Published

| | |
|---|---|
| OPINION FILED: | January 26, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 25, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Oneida |
|   JUDGE: | Michael H. Bloom |

JUSTICES:

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Alon Stein* and *Stein Law Offices*, Des Plaines, Illinois. There was an oral argument *Alon Stein*.

For the defendants-respondents, there was a brief filed by *Ryan X. Farrell* and *The Department of Workforce Development*; with

whom on the brief was *Kim T. Castelaz* and *The Labor and Industry Review Commission.*  There was oral argument by *Ryan X. Farrell.*

**2022 WI 4**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP520
 (L.C. 2019CV121)
 No.

| STATE OF WISCONSIN | : | IN SUPREME COURT |
|---|---|---|

**Friendly Village Nursing and Rehab, LLC and Friendly Village Healthcare Center,**

      **Plaintiffs-Appellants-Petitioners,**

  **v.**

**State of Wisconsin Department of Workforce Development and State of Wisconsin Labor and Industry Review Commission,**

      **Defendants-Respondents,**

  **v.**

**Rhinelander Healthcare Operator 150, LLC,**

      **Defendant.**

**FILED**

**JAN 26, 2022**

Sheila T. Reiff
Clerk of Supreme
Court

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the court of appeals. *Affirmed*.

¶1 REBECCA FRANK DALLET, J.  After purchasing Friendly Village Nursing and Rehab, Eden Senior Care[1] untimely filed its application with the Department of Workforce Development to succeed the unemployment insurance account of Friendly Village's previous owner.  This was a potentially costly mistake, because successors generally pay lower rates for unemployment insurance than non-successors.  See generally Wis. Stat. § 108.18 (2019–20).[2]  Eden's mistake was not necessarily fatal if it was "a result of excusable neglect."  See § 108.16(8)(b)4.  The Labor and Industry Review Commission, however, concluded that the record was insufficient to establish that Eden's application was late because of excusable neglect.  Eden challenges that conclusion and claims that the Commission also erred by failing to apply the "interests of justice" factors in its analysis. We disagree.  The "interests of justice" factors are not a necessary component of the excusable-neglect analysis under § 108.16(8)(b)4., and Eden has failed to demonstrate excusable neglect for filing its application late.

I

¶2 Eden Senior Care is an Illinois company that purchases and rehabilitates nursing homes.  On September 1, 2017, Eden

---

[1] Eden Senior Care is the parent company of Friendly Village Nursing and Rehab, LLC.  In addition to Friendly Village Nursing and Rehab being the name of one of Eden's subsidiaries, it is also the name of the nursing home at issue here.  Therefore, to avoid confusion between Friendly Village the company and Friendly Village the place, we use "Eden" to refer to the company.

[2] All subsequent statutory references are to the 2019–20 version unless otherwise indicated.

purchased its first two nursing homes in Wisconsin, including Friendly Village Nursing and Rehab.[3]  The acquisition triggered several statutory requirements, among them registration and reporting of a business transfer.  Eden could comply with those two requirements by submitting two Department forms:  the Employer Registration Report and the Report of Business Transfer.

¶3  The Employer Registration Report serves several purposes.  One purpose is that it provides a means for a business new to Wisconsin to meet the requirement that it register with the Department of Workforce Development.  See Wis. Admin. Code § DWD 110.04 (May 2020).[4]  Another purpose is that it helps the Department determine whether the business is an "employer" as defined by Wis. Stat. § 108.02(13).  If the business is an employer, it is required to contribute to the state's unemployment-insurance fund.  See Wis. Stat. §§ 108.16, 108.18.

¶4  Additionally, the Employer Registration Report alerts the Department that the new business is taking over an already existing business, in which case the transferee (the new business) may be eligible to acquire (or succeed) the previous employer's unemployment-account "experience."  See § 108.16(8).  If the previous employer has a high amount of account experience, then the transferee will likely benefit from succeeding that experience as, generally, the more account experience a business has, the

---

[3] Eden also purchased Northpoint Nursing and Rehab; that purchase is not at issue here.

[4] All subsequent references to the Wis. Admin. Code § DWD are to the May 2020 version.

lower its contribution to the unemployment-insurance fund. See § 108.18. The Employer Registration Report, however, does not state those implications directly. The closest it gets is a question that asks whether the new business acquired its "activity from a previous employer," borrowing from the language of § 108.16(8)(a). See § 108.16(8)(a) ("[A] business is deemed transferred if any asset or any activity of an employer . . . is transferred in whole or in part . . . ."). In any event, the Employer Registration Report is not part of the statutory requirements for succeeding a previous owner's unemployment-account experience; those requirements are laid out in § 108.16(8)(b)4.[5]

¶5 The second form relevant to Eden's statutory obligations is the Report of Business Transfer. Any time one business is transferred to another, the Department must be notified within 30 days of the transfer, even if both the transferee and transferor have previously operated in the state. See Wis. Stat. § 108.16(8)(k); Wis. Admin. Code § DWD 115.03. Completing and returning the Report of Business Transfer to the Department satisfies this notice requirement. A transferee who wants to acquire the previous employer's unemployment-account experience must file a "written application . . . requesting that it be deemed a successor." See Wis. Stat. § 108.16(8)(b)4. The Report

---

[5] All businesses, new to Wisconsin or previously established, are subject to the same requirements for succeeding a prior owner's unemployment-account experience. The Employer Registration Report, however, applies only to businesses new to Wisconsin.

4

of Business Transfer also satisfies this requirement if the transferee checks a box on the form indicating that "[t]his is [its] application to acquire the account experience of the former owner."[6] The Report of Business Transfer is available online as part of the Department's "Handbook for Employers,"[7] which includes detailed instructions for how to fill out the form, as well as how to contact the Department with any questions.

¶6 Although the Employer Registration Report and the Report of Business Transfer serve different purposes, there is one relevant connection between them. In the Employer Registration Report, when a new business answers "yes" to the question "Did you acquire this activity from a previous employer?," the Department typically contacts the business and alerts it to the Report of Business Transfer. There is no statutory requirement, however, that the Department do so. See generally Wis. Stat. § 108.16(8); Wis. Admin. Code § DWD ch. 115. Rather, the statutes place compliance with all registration and application requirements squarely on businesses. See Wis. Stat. § 108.16(8)(b)4., (k); Wis. Admin. Code § DWD 115.03.

---

[6] Although reporting a transfer is required——both generally and to acquire the previous employer's unemployment-account experience——using the Report of Business Transfer is not. Under Wis. Stat. § 108.16(8)(k) and Wis. Admin. Code § DWD 115.03, parties are required only to "notify the [D]epartment in writing." As for applying to acquire a previous employer's unemployment-account experience, Wis. Stat. § 108.16(8)(b)4. similarly requires transferees to submit only a "written application."

[7] https://dwd.wisconsin.gov/ui201/t6201.htm.

¶7 Here, Eden directed its Senior Business Analyst—a 22-year-old with bachelor's degrees in communications and biology—to complete the Employer Registration Report in early August 2017. In response to the question "Did you acquire this activity from a previous employer?" the analyst answered "no." That response meant that the Department did not contact Eden regarding the Report of Business Transfer since, as far as the Department knew, Eden was not involved in a business transfer.[8]

¶8 Eden filed its Report of Business Transfer on March 13, 2018,[9] and indicated that it was using that form as its application to succeed the previous employer's unemployment-account experience. The application was roughly six weeks late, as Eden's September 1, 2017 acquisition date set its application due date as January 31, 2018. Eden traces its untimely application to the Department's failure to contact it regarding the Report of Business Transfer. That failure, Eden says, was caused by its analyst's "misunderstanding" of the question on the Employer Registration Report regarding whether it had acquired an "activity" from a previous employer.

---

[8] The dissent asserts that Eden notified the Department of the business transfer in August 2017 via the Employer Registration Report. But by answering "no" to whether it acquired a previous employer's activity, Eden notified the Department that there was no transfer.

[9] Both Eden and Friendly Village's previous owner signed the Report of Business Transfer, thereby notifying the Department of the transfer. Both were late in doing so, however, because the notice was due no later than October 1, 2017. See Wis. Stat. § 108.16(8)(k) (requiring notice to the Department within 30 days of the transfer).

6

¶9   According to Eden, it was not until February 2018 that it learned it even had the option to acquire the prior owner's unemployment-account experience.  After filing its successorship application in mid-March, Eden emailed the Department, explaining that its application was late due to an "error in completing our initial DWD account application," adding that it was "new to the Wisconsin operations space and [was] not familiar with how the [unemployment-insurance] process worked."  The Department found that Eden's explanation did not amount to excusable neglect and therefore it rejected the application.[10]

¶10  Eden appealed to an administrative law judge.  After a hearing at which only the Department employee who handled Eden's application and Eden's corporate manager testified, the ALJ reversed the Department's determination.  The ALJ concluded that Eden had moved quickly to remedy its mistake and that Eden had not acted in bad faith.  The ALJ also noted that accepting Eden's untimely application "served the interests of justice."

¶11  The Department appealed that decision to the Commission, which reversed.  The Commission concluded that the record contained insufficient evidence to warrant a finding of excusable neglect.  Specifically, it noted that the analyst who filled out the Employer Registration Report did not testify, so there was "no competent

---

[10] The Department accepted Eden's untimely successorship application related to Northpoint Nursing and Rehab after determining that certain registration forms were mistakenly mailed to Eden's power of attorney's address rather than its corporate address.  The record contains no evidence of a similar problem regarding Friendly Village Nursing and Rehab.

7

evidence establishing the nature of his error." It explained that, because Eden's central business is acquiring and rehabilitating nursing homes, Eden's failing to be aware of the law regarding registering such business transfers was "less excusable than it otherwise might be," even accounting for the analyst's inexperience. The Commission also concluded that Eden's prompt remedy did "not eliminate the requirement that a dilatory party demonstrate excusable neglect for its initial failure to meet the statutory deadline."

¶12 Eden appealed to the circuit court,[11] arguing that the Commission erred because it failed to consider whether the "interests-of-justice factors"[12] supported a finding of excusable neglect. Eden asserted that in Casper v. American International Southern Insurance Co., 2011 WI 81, 336 Wis. 2d 267, 800 N.W.2d 880, we held that analyzing those factors is a necessary part of every excusable-neglect analysis. The circuit court rejected that argument and affirmed the Commission's determination, as did the court of appeals.

II

¶13 Our review is limited to the Commission's decision, not the circuit court's or the court of appeals'. Operton v. LIRC, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426. We defer to the

---

[11] The Honorable Michael H. Bloom of the Oneida County Circuit Court presided.

[12] See Connor v. Connor, 2001 WI 49, ¶41, 243 Wis. 2d 279, 627 N.W.2d 182.

8

Commission's findings of fact so long as there is "substantial and credible evidence" to support them, id., but we review its legal conclusions de novo, Wis. Bell, Inc. v. LIRC, 2018 WI 76, ¶29, 382 Wis. 2d 624, 914 N.W.2d 1.

### III

¶14 To qualify as a successor to an acquired business's "unemployment account experience," the transferee must meet two statutory requirements. First, it must establish that a business was, in fact, transferred. Under Wis. Stat. § 108.16(8)(a), a transfer occurs when a business's "asset or activity" is conveyed to another business "by any means, other than in the ordinary course of business." Second, the transferee must satisfy the Department that it meets all four successorship conditions in § 108.16(8)(b): the transferee must continue the transferor's business with generally the same employees, the transfer must have included at least 25 percent of the transferor's total business, the transferee must be subject to certain statutory financing provisions, and it must file a timely successorship application. There is no dispute that Eden is a transferee or that it meets the first three successorship conditions. Our focus is therefore on only the timeliness of Eden's successorship application.

¶15 A timely successorship application is one that the Department receives no later than "the contribution payment due date for the first full quarter following the date of the transfer." § 108.16(8)(b)4. Up to 90 days after that deadline, however, the Department may accept a late application, but only if

9

"the transferee satisfies the [D]epartment that the application was late as a result of excusable neglect." Id.[13] Here, Eden submitted its application late but within the 90-day post-deadline window. The question is whether its application was late due to excusable neglect.

¶16 The Commission concluded that it was not, and Eden challenges that conclusion on two grounds. It first argues that the Commission applied the wrong law by failing to include the "interests of justice factors" in its excusable-neglect analysis. Eden then argues that the Commission erred in concluding that, as a matter of law, the record evidence was insufficient to show excusable neglect. We address each argument in turn.

A

¶17 Eden argues that the Commission applied the incorrect standard for excusable neglect because the Commission did not consider the "interests-of-justice factors." Eden asserts that our holding in Casper makes those factors part of every excusable-neglect analysis. But this reads too much into Casper and ignores key differences between the text of the statute at issue there (§ 801.15(2)(a)) and the one at issue here (§ 108.16(8)(b)4.).

¶18 In Casper, we considered what a party must show for a circuit court to grant a motion to extend certain filing deadlines

---

[13] The legislature added the excusable-neglect provision in 2013. See 2013 Wis. Act 36, § 99. Prior to that amendment, the Department was required to deny all late successorship applications, no matter why they were late. See Wis. Stat. § 108.16(8)(b)4. (2011-12).

10

under § 801.15(2)(a).  336 Wis. 2d 267, ¶¶34-49.  That statute provides that a court may grant such an extension "only on motion for cause shown and upon just terms."  § 801.15(2)(a) (emphasis added).  When a party moves for an extension after the original deadline has already passed, the court may grant the extension only if it makes the additional finding that the party's "failure to act [before the deadline] was the result of excusable neglect."  Id.  Therefore, § 801.15(2)(a), by its plain terms, permits a court to grant a motion for an extension that is made after the original filing deadline passes only if it makes two separate findings:  (1) granting the extension is "just"; and (2) the party's neglect in failing to file earlier is excusable.  See id.; Casper, 336 Wis. 2d 267, ¶¶37-38.  Nowhere in Casper did we hold that the interests of justice are part of the excusable-neglect analysis. Rather, we reiterated that they guide part one of the two-part analysis required by the explicit language of § 801.15(2)(a). Casper, 336 Wis. 2d 267, ¶¶35-38; Miller v. Hanover Ins. Co., 2010 WI 75, ¶43, 326 Wis. 2d 640, 785 N.W.2d 493 (explaining that a court may grant a motion to enlarge time under § 801.15(2)(a) "if the circuit court makes a finding of excusable neglect 'and if the interests of justice would be served by the enlargement of time'") (quoting Estate of Otto v. Physicians Ins. Co. of Wis., Inc., 2008 WI 78, ¶114, 311 Wis. 2d 84, 751 N.W.2d 805 (emphasis added)).

¶19 Our analysis of the interests of justice in Casper was rooted in the text of § 801.15(2)(a), which explicitly allows a court to grant relief on "just terms."  Other statutes similarly pair "excusable neglect" with notions of justice or equity.  For

11

example, § 806.07(1) allows a court to grant a party relief from judgment "upon such terms as are just" and for reasons including excusable neglect or a finding that applying the judgment is "no longer equitable," as well as "[a]ny other reason[] justifying relief." But § 108.16(8)(b)4. contains no similar language directing the Department to consider just terms, equity, or "other reasons" for relief. Rather, "excusable neglect" is the only justification for the Department's accepting a late successorship application. See § 108.16(8)(b)4. (limiting even this exception to applications submitted fewer than 90 days late).

¶20 Given these differences in the statutory text, we cannot read "excusable neglect" as encompassing other interests-of-justice considerations. See Miller, 326 Wis. 2d 640, ¶¶43-44 (declining to extend to another statute the excusable-neglect requirement in § 801.15(2)(a) because the other statute "does not by its plain language require" such a finding); Village of Elm Grove v. Brefka, 2013 WI 54, ¶¶35-40, 348 Wis. 2d 282, 832 N.W.2d 121. The Commission therefore applied the correct legal standard for excusable neglect.[14]

B

¶21 Eden's other claim is that the Commission erred in concluding that the record does not demonstrate excusable neglect. We have defined "excusable neglect" as an error that "a reasonably

---

[14] Because the interests-of-justice factors are not part of the excusable-neglect analysis under Wis. Stat. § 108.16(8)(b)4., we deny as moot the Commission's motion to strike.

12

prudent person" would have committed "under the same circumstances." E.g., Hedtcke v. Sentry Ins. Co., 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982).[15] The inquiry is context dependent and requires a showing of something more than ordinary neglect or carelessness. E.g., id.; Casper, 336 Wis. 2d 267, ¶37. A party seeking relief under an excusable-neglect provision must offer a "persuasive explanation" for its mistake by pointing to "specific incidents" that occurred at the time of the mistake. See Hedtcke, 109 Wis. 2d at 473. In assessing a party's explanation, courts may consider the negligent actor's familiarity with the subject matter, as well as the actor's "age, education and experience." Hansher v. Kaishian, 79 Wis. 2d 374, 391-92, 255 N.W.2d 564 (1977). Ultimately, "the analysis in each case is fact specific," with the inquiry turning on a party's reasons or justifications for its negligent conduct as reflected in the record. See Casper, 336 Wis. 2d 267, ¶39.

¶22 In cases where we have held that a party's mistake was due to excusable neglect, the record contained some concrete, non-speculative evidence for why the mistake occurred. For example, excusable neglect includes a foreign corporation untimely filing its answer to a complaint due to reasonable "confusion created by

---

[15] Black's Law Dictionary contains a definition of "excusable neglect" that largely mirrors ours. See Neglect-excusable neglect, Black's Law Dictionary (11th ed. 2019) ("A failure——which the law will excuse——to take some proper step at the proper time . . . not because of the party's own carelessness, inattention, or willful disregard . . . but because of some unexpected or unavoidable hindrance or accident . . . .").

13

the interplay between the summons and the notice of service," each of which seemingly set a different date for when the answer was due. See Shirk v. Bowling, Inc., 2001 WI 36, ¶21, 242 Wis. 2d 153, 624 N.W.2d 375. We have also excused a corporation's untimely answer when the record demonstrated that the company had developed certain procedures for handling lawsuits, had followed those procedures, and, "despite its best efforts," its claims specialist had never received the complaint. See Casper, 336 Wis. 2d 267, ¶¶44-45.

¶23 But when the record is silent, or contains only speculation about the reasons for a party's mistake or its failure to take reasonably prudent precautions, there is no basis for the Commission or the court to excuse the party's neglect. For instance, we declined to excuse a defendant's untimely filing of its answer when it claimed it had misunderstood the terms of a "courtesy extension agreement," but the record contained "no notes, confirmation letters, or other documentation" reflecting the alleged misunderstanding. See Connor v. Connor, 2001 WI 49, ¶22, 243 Wis. 2d 279, 627 N.W.2d 182. We have also held that when a party attempts to justify its neglect by pointing to other typical work circumstances, such as the "press of other legal business" or "summer vacations," those reasons are insufficient, absent some additional "extraordinary explanation." See, e.g., Giese v. Giese, 43 Wis. 2d 456, 461-62, 168 N.W.2d 832 (1969); Cruis Along Boats, Inc. v. Standard Steel Prods. Mfg. Co., 22 Wis. 2d 403, 409, 126 N.W.2d 85 (1964). And when a defendant missed a 20-day deadline to file its answer but offered no

14

explanation for why it took 19 days to send the complaint from its office in Waukesha to its claims manager in California, the court of appeals declined to excuse the late filing because, "in the era of overnight express mail" and fax machines, a reasonably prudent person in the party's shoes would have ensured the complaint made it to California sooner. See Gerth v. Am. Star Ins. Co., 166 Wis. 2d 1000, 1008, 480 N.W.2d 836 (Ct. App. 1992); see also Dugenske v. Dugenske, 80 Wis. 2d 64, 70, 257 N.W.2d 865 (1977) (declining to reverse the circuit court's finding of no excusable neglect because the record "shed[] little light" on whether a reasonably prudent person would have acted as the negligent party did).

¶24 Here, Eden traces its untimely application to an employee mistakenly answering "no" to the question on the Employer Registration Report asking if Eden had "acquired an activity from a previous employer." According to Eden, its employee misunderstood the question——due to his young age, inexperience, and lack of legal training——and therefore answered it incorrectly. Because of that mistake, the Department did not contact Eden regarding the Report of Business Transfer. And because the Department did not alert it to that form, Eden did not return the form as its successorship application prior to the application deadline. There are two problems with Eden's argument.

¶25 First, the record contains only speculation about why Eden incorrectly answered the question of whether it acquired an activity from a previous employer. Eden's owner——who was not the person who filled out the Employer Registration Report——testified

15

that there "might have been [a] misunderstanding or mistake on one of the questions" (emphasis added). The record, however, contains no evidence that the employee who completed the form in fact misunderstood the question. That employee did not testify, and the record contains no other evidence explaining why he answered the question "no." See Connor, 243 Wis. 2d 279, ¶22.

¶26 In the absence of the employee's direct testimony, Eden points to the employee's relatively young age, inexperience, and lack of legal training as sufficiently justifying his mistake. To the extent that the employee's youth and inexperience contributed to his supposed confusion, a reasonably prudent person in the same situation——having no unemployment-insurance experience and not fully understanding the consequences of certain responses on the Employer Registration Report——would ask for help before submitting the document, or at least do additional research. See Hansher, 79 Wis. 2d at 391-92; Maier Constr., Inc. v. Ryan, 81 Wis. 2d 463, 474, 260 N.W.2d 700 (1978), overruled on other grounds by J.L. Phillips & Assocs., Inc. v. E & H Plastic Corp., 217 Wis. 2d 348, 577 N.W.2d 13 (1998). There is no evidence that Eden's employee did so. Moreover, Eden has offered no explanation for why it directed someone so inexperienced and unfamiliar with Wisconsin's business-registration procedures to complete the Employer Registration Report. See Carmain v. Affiliated Cap. Corp., 2002 WI App 271, ¶27, 258 Wis. 2d 378, 654 N.W.2d 265.

¶27 Second, no matter how Eden completed the Employer Registration Report, it was still obligated to fulfill the successorship requirements under Wis. Stat. § 108.16(8)(b) and

16

Wis. Admin. Code § DWD 115.03. It is true that had Eden answered "yes" to the question of whether it acquired a previous employer's activity, the Department likely would have contacted Eden and notified Eden of its obligation to file the Report of Business Transfer. But the Department has no statutory duty to contact the employer. Eden, on the other hand, has a statutory obligation to "notify the [D]epartment in writing" of both its business acquisition, Wis. Stat. § 108.16(8)(b)(k); Wis. Admin. Code § DWD 115.03, and that it was applying to succeed the previous employer's unemployment-account experience, Wis. Stat. § 108.16(8)(b)4. Those obligations apply regardless of how an employer answers the questions in the Employer Registration Report or whether the Department alerts the employer to the Report of Business Transfer.[16] Not to mention, anyone can find the Report of Business Transfer on the Department's public website.

---

[16] For this same reason, the dissent's focus on the mechanism by which the Department contacts businesses who may be involved in a transfer is misplaced. The Department could eliminate that voluntary process and Eden's statutory obligations would remain. Moreover, the dissent's argument that Eden was disadvantaged because it didn't know how the Department's process worked is self-defeating. If Eden had no idea that certain answers on the Employer Registration Report would have generated an alert from the Department, then it had no reason to wait for the Department to contact it before fulfilling its statutory requirements.

The dissent also confusingly suggests that because Eden and Friendly Village's previous owner failed to comply with their joint requirement to notify the Department of the business transfer under § 108.16(8)(k), the court should excuse Eden's failure to comply with the separate successorship-application requirements under § 108.16(8)(b)4. We fail to see why the previous owner's failure under para. (8)(k) is relevant or how Eden's two wrongs make a right.

17

¶28 Eden makes no specific argument for why, independent of its mistake on the Employer Registration Report, it failed to timely file its successorship application. Rather, Eden urges generally that we should excuse its neglect because it was "not familiar with how the [unemployment-insurance] process worked" in Wisconsin. But mere ignorance of the law, particularly in the area of one's business expertise, is not excusable neglect. See Putnam v. Time Warner Cable, 2002 WI 108, ¶13 n.4, 255 Wis. 2d 447, 649 N.W.2d 626 ("[E]very person is presumed to know the law and cannot claim ignorance of the law as a defense."). Eden's owner testified that he was aware Wisconsin's laws may differ from Minnesota's (where Eden had exclusively conducted its previous business), but he "d[id]n't recall" speaking to anyone regarding what those differences might be. A reasonably prudent business in these circumstances would have at least attempted to familiarize itself with Wisconsin's requirements before submitting official documentation to the Department. See Edwards v. Kotlarek, No. 2009AP123, unpublished op., ¶¶8-10 (Wis. Ct. App. Aug. 31, 2010) (holding that a party's unfamiliarity with the law, without more, is not excusable neglect). Eden could have contacted the Department directly for guidance or taken advantage of the Department's publicly available resources regarding new employers' unemployment-insurance responsibilities. Indeed, Eden reached out to the Department after its deadline passed, but offers no reason for why it did not do so earlier.

¶29 In sum, focusing on the Employer Registration Report distracts from the real issue——that Eden failed to timely file a

18

successorship application under § 108.16(8)(b)4. As the Commission correctly concluded, nowhere does the record contain evidence of a reason for that failure that rises to the level of excusable neglect.

IV

¶30 We conclude that the Commission applied the correct legal standard. The interests-of-justice factors are not part of the excusable-neglect analysis under Wis. Stat. § 108.16(8)(b)4. We further conclude that there is no basis in the record on which to excuse Eden's neglect in filing its successorship application after the statutory deadline. The Department thus correctly rejected Eden's successorship application.

*By the Court.*—The court of appeals' decision is affirmed.

¶31 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* The Labor Industry Review Commission (LIRC) denied Friendly Village Nursing and Rehab, LLC (Friendly Village) successor status for the Department of Workforce Development (DWD) unemployment account experience of the business Friendly Village purchased because LIRC concluded that Friendly Village's untimely request to become a successor was not excusable. Wis. Stat. § 108.16(8)(b)4. Late filings that occur within 90 days of the DWD deadline are accepted if the totality of circumstances relative to the late filing meet the legal standard of excusable neglect. Wis. Stat. § 108.16(8)(b)4; Wis. Admin. Code § DWD 115.07(2)(a).

¶32 In the case before us, the manner in which DWD programmed its response to answers to its online questions denied Friendly Village effective communication that would have facilitated Friendly Village's timely filing as a successor business.[1] Stated otherwise, DWD's programming was a reasonable factual cause that contributed to Friendly Village's late filing. In addition, Friendly Village's seller did not notify DWD of its sale as Wis. Stat. § 108.16(8)(k) required. And finally, Friendly Village promptly filed corrected information with DWD. Therefore, under the totality of circumstances, I conclude that Friendly Village proved excusable neglect. Because the majority opinion follows LIRC's erroneous lead and does not review the totality of circumstances as is required, I respectfully dissent.

---

[1] Program: "to work out a sequence of operations to be performed by (a mechanism, such as a computer)." Merriam Webster. Merriam-Webster.com/dictionary/program (last visited Jan. 19, 2022).

1

## I. BACKGROUND

¶33 On September 1, 2017, Friendly Village purchased a business from Rhinelander Healthcare Operator 150, and Northpoint Nursing and Rehab, LLC (Northpoint) purchased a business from Simon Oshkosh Properties, LLC. Friendly Village and Northpoint are both operated by Eden Senior Care (Eden), whose nursing home rehabilitation business is new to Wisconsin. As employers new to Wisconsin, both were required to register with DWD. Wis. Stat. § 108.16(8)(k). This can be accomplished with DWD's "Internet Employer Registration Report," also referred to herein as DWD's online report.[2]

¶34 On August 9, 2017, in anticipation of closing on purchases of Friendly Village and Northpoint, an Eden employee completed the DWD online report for each facility. The report had numerous questions. The first question asked, "Did you acquire this activity from a previous employer?" That question was answered "No" for both Friendly Village and Northpoint. The second question on the report was, "Have you paid employees for work performed in Wisconsin?" That question was answered "No," as well, for both facilities. The third question asked, "Do you expect to pay wages for work performed in Wisconsin in the future?" Both facilities answered "Yes" to this online report question. "Activity" was not defined in the online report, nor was there a statutory reference to Wis. Stat. § 108.16(8) that might link "activity" to a business purchase.

---

[2] Transcript of Administrative Hearing Department of Workforce Development, Exhibit 5 (Oct. 3, 2018).

¶35 The Report of Business Transfer (ROBT) form differs from the online report and provides significant communication about options that a business new to Wisconsin should know.[3] To explain further, the ROBT requires that each "Former Owner/Operator" and each "New Owner/Operator" sign a joint ROBT for each business transfer. Wisconsin Stat. § 108.16(8)(k) also provides that "both the transferor and the transferee shall notify the department in writing of the transfer, within 30 days after the date of transfer." In the matter before us, Friendly Village complied when it completed the online report, but the transferor to Friendly Village did not notify DWD of the transfer within 30 days.[4]

¶36 ROBT provision 5, contains "Options for New Owner/Operator," which instructs, "You may have an option to acquire the Unemployment Insurance experience of the former owner. An application to acquire this experience must be filed by the appropriate date. See chart at right." The ROBT permits a new owner to choose, "This is my application to acquire the account experience of the former owner." The ROBT communicates that if the change of business ownership or operation occurs during the period of "July 1 to Sept. 30," the new owner should apply to transfer the account experience by January 31.

---

[3] The ROBT form references Wis. Stat. § 108.16(8), which provides additional business-transfer information.

[4] It is possible, although the record is not clear, that the transferor to Northpoint did notify DWD of the transfer because DWD knew Northpoint was a new employer and tried to send Northpoint forms relative to becoming a successor to account experience. Transcript of Administrative Hearing Department of Workforce Development, Exhibit 6 (Oct. 3, 2018).

3

¶37 And finally, ROBT provision 8 is labeled "Continuation of Business" and it asks, "Has the new owner/operator continued to operate the same business activity without interruption?" To which, the Eden employee answered, "Yes" for Friendly Village. Provision 8 also asks, "Has the new owner/operator continued to operate the same business activity in the same location?" Again, the query was answered, "Yes." The questions and answers provide the necessary factual foundation for Friendly Village and Northpoint to succeed to the prior owners/operators unemployment account experiences.

¶38 DWD rejected Friendly Village's ROBT, but it accepted Northpoint's ROBT, which also was filed late but reviewed by a different DWD employee.[5] Friendly Village asked for an administrative review, which DWD provided.

¶39 Chelsea Church, the DWD employee who reviewed Friendly Village's request to conclude that its late filing was due to excusable neglect, testified at the administrative hearing. She explained how the DWD online report operated as part of DWD's

---

[5] Initially, DWD rejected Northpoint's request to become a successor for its seller's unemployment account experience. On February 27, 2018, Northpoint appealed stating, "I am writing to appeal the initial determination made that Northpoint Nursing and Rehab LLC . . . is not the successor to the Wisconsin Unemployment Reserve account of Simon Oshkosh Properties LLC." The Eden employee said that his requests for information had been sent to the former management company on 11/06/2017 and 12/06/2017, rather than Eden Senior Care. Daniel McHugh of DWD responded to Northpoint, saying that "I should be able to process this without processing the appeal. It was late, but this seems to be 'excusable neglect' and I should be able to approve it." Transcript of Administrative Hearing Department of Workforce Development, Exhibit 6 (Oct. 3, 2018).

"system." She explained that if the first question of the report had been answered yes, "then after they submitted this registration online, they'll receive a notification from our system that they need to complete their Report of Business Transfer form."[6] She also explained that with a "yes" answer to the first online report question, "our department receives notification that we need start a transfer investigation, and they would start contacting them for that."[7] On cross-examination, she also explained that there was nothing in the online report that directed the person completing it to the ROBT.[8] She explained, "It only does that if the employer answers yes to that question, the --- did you acquire this activity from a previously employer question, otherwise, it does not."[9]

¶40 Rostislav Pukshansky, an owner of Friendly Village, also testified. He said that Jesse Pukshansky completed the online report for Friendly Village. He explained that Jesse is 22 years old and had no legal education or experience with DWD. As part of his testimony, Mr. Pukshansky also presented a communication that concluded that Northpoint's late filing was accepted based on a determination that the lateness was due to excusable neglect.

¶41 Mr. Pukshansky never received any communication from DWD or from the seller, Rhinelander Healthcare Operator, regarding successor status or an ROBT application. He was provided with a

---

[6] Transcript of Administrative Hearing, Department of Workforce Development, at 21 (Oct. 3, 2018).

[7] Id.

[8] Id. at 24.

[9] Id.

5

ROBT form in early March of 2018 after he reached out to DWD with questions about what he had heard about Northpoint's experience. He was told he could still apply to become a successor to the seller's account experience and to write a letter, as Northpoint had, explaining why the ROBT filing was late. He testified that he called the contact for the seller that same day and asked him to complete the seller's part of the ROBT.[10] The seller did so.[11] It was that joint ROBT that Friendly Village filed with DWD on March 13, 2018.

¶42 Mr Pukshansky also testified about his call with Ms. Church. "I remember she confirmed that there hadn't been any forms sent by the unemployment office for the Rhinelander/Friendly Village sale. We both figured out maybe because of the way the registration was filled out by Jesse initially, there might have been misunderstanding or mistake on one of the questions."[12] After their discussion, he submitted a letter explaining why the ROBT

---

[10] Id. at 36.

[11] Id. at 38.

[12] Id. at 40. Later, on redirect, Ms. Church confirmed that Northpoint's answer to the first report question had been, "no," just as Friendly Village had answered its first report question. She also explained that a second report had been submitted for Northpoint on March 8, 2018, and in that report, Northpoint answered the first question, "yes." Ms. Church explained that March 8th "was about the same time as [her] activity with, uh, Mr. [Pukshansky] was going on regarding Friendly Village." She further explained that March 8, 2018 was after DWD's March 6, 2018 grant of successorship to Northpoint. Transcript of Administrative Hearing Department of Workforce Development, at 53-54 (Oct. 3, 2018).

6

was late, and he asked her "to grant the excusable neglect exception in a similar basis as the North Point facility."[13]

¶43  After a full evidentiary hearing, the Administrative Law Judge determined that Friendly Village's late filing was due to excusable neglect; and therefore, its ROBT should be accepted. LIRC reversed the Administrative Law Judge's decision, without taking any additional testimony and without conferring with the Administrative Law Judge.[14]

¶44  LIRC concluded that because the Eden employee who completed the online report did not appear to testify, "[t]here thus is no competent evidence establishing the nature of his error, such that a finder of fact could conclude that the error was excusable."[15]  The issue, however, is whether the totality of circumstances relative to the late filing fulfilled the legal standard for excusable neglect pursuant to Wis. Stat. § 108.16(8)(b)4.  This includes the factual background for the late filing and subsequent actions taken by Friendly Village in regard to becoming the successor of its seller's unemployment account experience.  As I explain below, it is the undisputed facts applied to the statutory standard that drives the question of law that controls this case.  LIRC did not apply the correct standard of review because it thought excusable neglect was a finding of

---

[13] Id. at 41.

[14] Rhinelander Healthcare Operator 150, LLC Employer/Transferor Friendly Village Nursing and Rehab, LLC, Employer/Transferee, No. S1800077MD, slip op. at 2 (April 24, 2019).

[15] Id. at 3.

fact and that it could be shown only by testimony from Jesse Pukshansky that relayed what he was thinking when he completed DWD's online report.

¶45 Friendly Village appealed LIRC's determination. The circuit court affirmed LIRC, as did the court of appeals.

## II. DISCUSSION

### A. Standard of Review

¶46 The Administrative Law Judge concluded that excusable neglect had been shown for Friendly Village's late ROBT filing. LIRC concluded the opposite.[16] Whether excusable neglect has been shown requires us to determine whether the uncontested facts fulfill the statutory standard set out in Wis. Stat. § 108.16(8)(b)4. This determination presents a question of law, Brown v. LIRC, 2003 WI 142, ¶11, 267 Wis. 2d 31, 671 N.W.2d 279; Johns v. County of Oneida, 201 Wis. 2d 600, 605, 549 N.W.2d 269 (Ct. App. 1996), which we review independently. Tetra Tech EC, Inc. v. DOR, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21.

### B. Excusable Neglect

¶47 Excusable neglect is not an easy legal principle to apply. It appears in a number of different statutes to be used in a number of different contexts. For example, Wis. Stat. § 801.15(2)(a), which employs excusable neglect, often is discussed in opinions involving default judgments when a filing deadline has been missed. See e.g., Hedtcke v. Sentry Ins. Co., 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982).

---

[16] We review LIRC's decision not that of the circuit court or the court of appeals. Operton v. LIRC, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426.

8

¶48 In regard to LIRC's decision on a transferee's successor status when the transferee's application is received late, excusable neglect is driven by Wis. Stat. § 108.16(8), which provides in relevant part:

> (b) If the business of any employer is transferred, the transferee is deemed a successor for purposes of this chapter if the department determines that all of the following conditions have been satisfied:
>
> . . . .
>
> 4. The department has received a written application from the transferee requesting that it be deemed a successor. Unless the transferee satisfies the department that the application was late as a result of excusable neglect, the application must be received by the department on or before the contribution payment due date for the first full quarter following the date of the transfer. The department shall not accept a late application under this subdivision more than 90 days after its due date.[17]

§ 108.16(8)(b). All agree that Friendly Village met all the criteria to become a successor to Rhinelander Healthcare Operator 150's unemployment account experience, except for its tardy filing of the ROBT.

¶49 Whether the undisputed facts fulfill "excusable neglect" for the late filing of Friendly Village's ROBT pursuant to Wis. Stat. § 108.16(8)(b)4. is central to this controversy. The majority opinion does not cite a decision interpreting § 108.16(8)(b)4., and I could find none. The majority opinion

---

[17] Wisconsin Admin. Code § DWD 115.07(2)(a) contains a similar directive: "The department shall accept a late application received no more than 90 days after its due date if the transferee satisfies the department that the application was late as a result of excusable neglect."

simply concludes Friendly Village had an obligation to timely file a ROBT and it did not meet it.[18]

¶50 I conclude that a plain reading of Wis. Stat. § 108.16(8)(b)4. requires that a reasonable factual cause must contribute to filing the ROBT late in order to constitute excusable neglect. This conclusion is consistent with employing a reasonable factual cause as a contributing factor for excusable neglect in other contexts.

¶51 For example, applying Wis. Stat. § 801.15(2)(a), we concluded in Hedtcke that "the first step is to determine if there are reasonable grounds for the noncompliance with the statutory time period (excusable neglect)." Id. We also reasoned that a court must "be aware of the effects of an order denying or granting relief." Id. at 469. That is, what effect would the court's decision have on both parties.

¶52 Wisconsin courts have defined excusable neglect as "conduct that 'might have been the act of a reasonably prudent person under the same circumstances.'" Binsfeld v. Conrad, 2004 WI App 77, ¶23, 272 Wis. 2d 341, 679 N.W.2d 851. In Binsfeld where a motion for default judgment was lodged against Conrad, Conrad responded that he should not be subject to a default judgment because confusion was caused, in part, by Binsfeld's counsel. Conrad relayed that when the insurance company's representative asked counsel for Binsfeld for the answer's due date, he said that he would get back to him but never did. Id., ¶27. In considering the totality of circumstances that bear on excusable neglect, the

---

[18] Majority op., ¶¶27, 28.

10

court concluded that "ineffective communication" had occurred thereby supporting the legal conclusion of excusable neglect. Id., ¶30.

¶53  In the matter before us, I consider the totality of circumstances that contributed to Friendly Village's late filing. First, when Friendly Village attempted to register as an employer with DWD by completing DWD's online report, the first question did not ask about the purchase of a business. Instead it asked, "Did you acquire this activity from a previous employer?" Because Friendly Village answered that question, "No," DWD's report was programmed not to communicate with Friendly Village about successor status, as it would have if the answer to that question had been "Yes."[19]

¶54  If DWD had contacted Friendly Village as a new employer, effective communication would have facilitated Friendly Village's timely filing. Also, Friendly Village's seller did not report the sale of its business to DWD within 30 days of the September 1, 2017 sale as Wis. Stat. § 108.16(8)(k) required. If it had done so, DWD would have known about Friendly Village as a new employer, as apparently DWD did with Northpoint. Therefore, ineffective communications from DWD due to DWD's programming of the online report and the seller, who did not comply with § 108.16(8)(k) were contributing causes of Friendly Village's late filing because both resulted in limiting DWD's communication of necessary information to Friendly Village. Id.

---

[19] Transcript of Administrating Hearing, Department of Workforce Development, at 21 (Oct. 3, 2018).

11

¶55 Second, Friendly Village corrected its late filing as soon as it learned what it should do. Mr. Pukshansky explained that he learned about successor status in late February 2018 when he heard about Northport's experience.[20] He testified that he called DWD and learned of the ROBT and that both Friendly Village and its seller had to sign it. He called his contact with the seller that same day, asked him to sign the ROBT, and sent him the form.[21] When the seller returned the signed ROBT, Mr. Pukshansky promptly filed it with DWD.[22] Prompt corrective action is supportive of concluding that excusable neglect has been shown. Charolais Breeding Ranches, Ltd. v. Wiegel, 92 Wis. 2d 498, 512, 285 N.W.2d 720 (1979) (directing that in "determining whether the 'reasonably prudent person' standard has been met, the trial court should consider whether the person has acted promptly to remedy his situation").

¶56 The majority opinion quotes excerpts from Black's Law Dictionary that defines excusable neglect as, "A failure——which the law will excuse——to take some proper step at the proper time . . . not because of the party's own carelessness, inattention, or willful disregard . . . but because of some unexpected or unavoidable hindrance or accident."[23] Although I do

---

[20] Transcript of Administrative Hearing, Department of Workforce Development, at 50 (Oct. 3, 2018).

[21] Id. at 36.

[22] Id. at 38.

[23] Majority op., ¶21 n.15; Black's Law Dictionary, 1133 (9th ed).

12

not agree with the majority opinion's ultimate conclusion, I have no problem with Black's definition.

¶57 In the matter before us, the majority opinion does not seem to have a clue about why Friendly Village was a victim of DWD's computer program that underlies its online report. This is surprising because as explained by Ms. Church in her testimony at the administrative hearing, the report controls whether communication about filing a ROBT will be sent from DWD's "system" to a new Wisconsin employer. It also controls whether DWD will receive notice so that it will begin contacting the new employer.

¶58 Friendly Village had no knowledge of DWD's programming and how it impacted effective communication between DWD and Friendly Village, nor is it reasonable to expect that as a new employer it should have had such knowledge. Accordingly, the reason for Jesse Pukshansky's answering the first question "No" does not matter. Whatever his reason, communication from DWD to Friendly Village would be the same: no communication because of the program's response to a "No" answer.[24]

¶59 The Administrative Law Judge who heard Ms. Church's testimony concluded that given an employee inexperienced with DWD completed the online report, excusable neglect for the late filing had been shown. LIRC reversed.[25]

---

[24] I hope that DWD reads this dissent and revises its program for the online report so that sending ROBT filing information and departmental-successor contacts occur for all new employers who complete DWD's online report.

[25] LIRC decision at 3.

13

¶60 Although LIRC's opinion shows it likely knew how the online report program functioned, its decision ignores how critical that knowledge was to effectively completing the online report. Its decision also seems to presume that the employee who completed Friendly Village's online report should have known what results would be generated by DWD's system if question one were answered "Yes." The record contains nothing to support such a presumption.

¶61 DWD set up the online report through its Bureau of Tax and Accounting – Tax Unit. How the report is programmed and functions is beyond the control and knowledge of those who complete the report for the first time. Ms. Church may not have understood the underlying programming, but she knew how the online program worked, as her testimony showed.

¶62 There is no way that the Eden employee who was new to Wisconsin and completed DWD's online report would know, or should know, that a "No" answer to the first online report question would deny Friendly Village communications from DWD that would facilitate its registration as an employer with successor status. Rather, the failures of DWD to send necessary information and to begin its business transfer investigation resulted from the way in which DWD's online report is programmed. The resulting "ineffective communication" from DWD was a contributing cause of Friendly Village's late filing, just as "ineffective communication" contributed to the court of appeals' conclusion of excusable neglect in Binsfeld.

14

¶63 Accordingly, because the programming of DWD's online report set up the chain of events that resulted in Friendly Village's tardy filing of its ROBT, together with the seller's failing to register the business sale and Friendly Village's prompt efforts at correcting its tardy filing, I conclude that the statutory standard for excusable neglect has been met. Friendly Village was not careless. Rather, the online report created an unexpected hindrance to an employer who did not know that the report provided differing assistance to the employer as the result of differing answers to the first report question.

## III. CONCLUSION

¶64 In the case before us, the manner in which DWD programmed its response to answers to its online questions denied Friendly Village effective communication that would have facilitated Friendly Village's timely filing as a successor business. Stated otherwise, DWD's programming was a reasonable factual cause that contributed to Friendly Village's late filing. In addition, Friendly Village's seller did not notify DWD as Wis. Stat. § 108.16(8)(k) required. And finally, Friendly Village promptly filed corrected information with DWD. Therefore, under the totality of circumstances, I conclude that Friendly Village proved excusable neglect. Because the majority opinion follows LIRC's erroneous lead and does not review the totality of circumstances as is required, I respectfully dissent.

¶65 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice REBECCA GRASSL BRADLEY join this dissent.

15